**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 94-5532

ANTHONY JACQUEZ LAMARR,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 94-5533

GUY A. DILLARD,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.
                                                               No. 94-5562

MAURICE L. MALLORY, a/k/a Darrell
Lee Lawson,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Chief District Judge.
(CA-93-173-D)

Argued: December 8, 1995

Decided: February 15, 1996

Before ERVIN and MOTZ, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Ervin wrote the opinion, in which Judge Motz and Senior Judge Williams joined.

_____

**COUNSEL**

**ARGUED:** George David Nixon, KING, FULGHUM, SNEAD, NIXON & GRIMES, P.C., Roanoke, Virginia, for Appellant Lamarr; Robert F. Rider, RIDER, THOMAS, CLEAVELAND, FERRIS & EAKIN, Roanoke, Virginia, for Appellant Mallory; Perry Henry Harrold, Martinsville, Virginia, for Appellant Dillard. Kenneth C. Bartholomew, Third Year Law Student, University of Virginia School of Law, Charlottesville, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Joseph W.H. Mott, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

_____

**OPINION**

ERVIN, Circuit Judge:

Anthony Jacquez Lamarr, Guy Anthony Dillard, and Maurice L. Mallory were convicted of several offenses including and related to conspiracy to distribute cocaine base ("crack"). They argue on appeal that the district court should have conducted separate trials for Lamarr and Mallory, that the trial judge attributed too much cocaine to Mallory under the Sentencing Guidelines, that there was insufficient evidence to support their convictions, and that Dillard was entrapped by police. We find no merit in those arguments. The appellants also contend that the government improperly questioned witnesses about the appellants' prior bad acts. We agree that prosecutors sought to elicit inadmissible testimony, and we disapprove strongly of their efforts,

2

but we believe that the objectionable questions do not require reversal in this case. Accordingly, we affirm.

I.

On August 11, 1993, police in Roanoke, Virginia, arrested Lamarr, Mallory, and other co-conspirators--including alleged conspiracy leader Joseph Manns--in response to an anonymous tip that they were trafficking in illegal drugs. The police found in the arrestees' hotel rooms 678.3 grams of cocaine, a Desert Eagle .357 semi-automatic handgun, and over $8000 in cash. They soon learned that Mallory was a fugitive from justice.

Manns agreed to cooperate. He contacted Dillard to arrange a sale. Police arrested Dillard when he came to Manns's hotel room to buy the cocaine. Dillard was carrying 5.72 grams of crack, a Colt .38 revolver, and $1,389 in cash; police found another .38 revolver in his car.

Manns testified at trial that in the fall of 1992 he began travelling from New York to Virginia to sell drugs. He said that Lamarr and Mallory joined his operation in May 1993. Lamarr and Mallory contested Manns's account by presenting evidence that they did not go to Virginia until late July, 1993, on a vacation visit to Manns's family.

II.

A.

The appellants contend that prosecutors repeatedly and improperly questioned witnesses about the appellants' prior bad acts, in violation of Fed. R. Evid. 404(b). We addressed Rule 404(b) in United States v. Rawle:

> Fed.R.Evid. 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." . . . Under Rule 404(b), however, prior bad

3

acts are admissible if they are (1) relevant to an issue other than character, (2) necessary, and (3) reliable.

845 F.2d 1244, 1246-47 (4th Cir. 1988). Issues other than character may include, the appellants note, "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Appellants argue also that unfair prejudice outweighed the probative value of each question they contest, in violation of Fed. R. Evid. 403.

We agree that the prosecutors did attempt to introduce improper evidence. Such cross-examination tactics are highly inappropriate, unnecessary, and unfair. We are at a loss to understand why prosecutors are willing to jeopardize criminal convictions by failing to remember and apply Justice Sutherland's classic admonition:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor--indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods . . . as it is to use every legitimate means to bring about a just [conviction].

Berger v. United States, 295 U.S. 78, 88 (1935). In this case, however, unlike Berger, the particularly harmful effect of the government's improper questions was eliminated by the witnesses' answers or was largely remedied by the district court's corrective measures, and the evidence against the appellants was very strong without the prosecution's objectionable tactics. For these reasons, the questions present no ground for reversal. In another case, when improper prosecution questions result in more prejudicial answers, evoke less effective corrective measures by the trial court, or are accompanied by less powerful prosecution evidence, such question might require reversal.

4

1.

In cross-examining Mallory's mother about her son's relationship with Lamarr, the prosecutor asked if Mallory and Lamarr had been "involved in drugs together." The appellants objected, and the court sustained the objection before Ms. Mallory could answer. The district court instructed the jury to disregard the question, but denied appellants' motion for a mistrial. A mistrial should be granted only if a question so prejudicially affects a defendant's rights that it denies him a fair trial. We can reverse the denial of the mistrial motion only if the district court abused its discretion by finding that the question did not deny the appellants a fair trial. United States v. Castner, 50 F.3d 1267, 1272 (4th Cir. 1995).

Appellants argue that the question's "only tendency was to plant a negative image of Mallory and his associates in the minds of the jurors." We agree. But the district court did not abuse its discretion by concluding that the appellants' sustained objection to the question, the remedial instruction to the jury, and the witness's failure to answer prevented the question from denying the appellants a fair trial.

2.

The prosecutor asked another witness--Mallory's friend Benjamin Greaves--whether Mallory had been involved in drugs in late 1992. Mallory's counsel objected initially, but withdrew the objection before Greaves's answer. Greaves answered in the negative.

When an item of evidence is entered without objection, the standard of review is very deferential. We will reverse only if the district court plainly erred by failing to disallow the evidence sua sponte, and if failing to reverse would cause a miscarriage of justice. See United States v. Mitchell, 1 F.3d 235, 239-40 (4th Cir. 1993). Assuming arguendo that the question was improper, the prejudice that it caused was not sufficiently severe. The witness's answer was favorable to Mallory, so any prejudice must have arisen from the question itself. A prosecutor's mere suggestion of misconduct can be damaging to a defendant, even if the witness answers negatively. See Berger, 295 U.S. at 88. But the record contains enough other evidence of Mal-

5

lory's involvement in drugs that our failure to reverse on this ground will not cause a miscarriage of justice.

3.

The appellants contest another question asked of Greaves. After Greaves testified that Mallory had travelled to Boston in late 1992, the prosecutor asked, "he was involved with drugs at that time, wasn't he?" Again, Greaves answered negatively and Mallory's attorney refrained from objecting. Lamarr's attorney objected, however, because of the close relationship the prosecution had alleged between Lamarr and Mallory. He argued that the indictments did not include any events in Boston. The district court overruled the objection, reasoning that the conspiracy allegedly began in 1992.

Lamarr and Mallory contend that the evidence was irrelevant. They point out that the indictment alleged no events in Boston and that the government's lead witness indicated that they did not begin travelling with him until May 1993. The government responds that the indictment encompassed events in Virginia, New York, and "elsewhere,"[1] and that an affirmative answer by Greaves would have been probative of Lamarr and Mallory's planning of the conspiracy. Because only Lamarr objected to the question, we apply different standards to the two appellants. Regarding Lamarr's claim, we review for abuse of discretion, and reverse only if the error was not harmless. United States v. Heater, 63 F.3d 311, 320, 325 (4th Cir. 1995); see also United States v. Davis, 657 F.2d 637, 640 (4th Cir. 1981) ("The test for harmlessness for nonconstitutional error is whether it is probable that the error could have affected the verdict reached by the particular jury in the particular circumstances of the trial."). Regarding Mallory's claim, we review for plain error, and reverse only if affirming would cause a miscarriage of justice. See Mitchell, 1 F.3d at 239-40.

We agree that the question's relationship to the charged conspiracy was tenuous. Had Greaves answered in the affirmative, the question's primary effect would have been to impermissibly paint Mallory, and Lamarr by association, as drug traffickers. Thus it was unnecessary

_____

1 "[E]lsewhere" was never explained, and there was no evidence of any conspiratorial activity in Boston at any time.

6

under Rule 404(b) and unfairly prejudicial under Rule 403. Because Greaves answered in the negative, however, and because there was substantial proper evidence of the appellants' guilt, we find no reasonable likelihood that the question affected the jury's verdict.

4.

After Greaves testified that he knew Mallory was a fugitive, the prosecutor asked him if he knew the nature of the charge from which Mallory was fleeing. Mallory's attorney objected before Greaves could answer, and the district court sustained the objection. The appellants argue that the question was unreliable because

> (1) there was no attempt to prove that the underlying charge was a drug charge, and (2) the warrant on the underlying charge provides a probable cause standard of proof only, which is not sufficiently reliable to allow the evidence to come in at trial.

This argument is meritless. The question itself was an attempt to show that the charge was a drug charge, and there is no requirement that the government prove by extrinsic evidence what it fails to elicit in cross-examination. Michelson v. United States , 335 U.S. 469, 481 & n.18 (1948) (allowing questions for which prosecutor has factual basis even if factual basis itself is inadmissible). Moreover, a conviction is not a prerequisite to cross-examination about a prior bad act. Id. at 481. Most importantly, the district court sustained the objection and the witness did not answer, so the appellants' only remedy below would have been a mistrial. They did not move for a mistrial, so to reverse this court would have to find that the mere asking of the question denied the appellants their right to a fair trial, and that the district court plainly erred by failing to make such a finding sua sponte. Castner, 50 F.3d at 1272. If there was error it was not plain, and if the question caused any prejudice it was not of sufficient magnitude.

5.

Dillard contests the trial court's ruling that, if he took the stand, the government would be permitted to cross-examine him about his 1988

7

convictions for possession and sale of cocaine and marijuana. Because of that ruling, Dillard contends, he forfeited his constitutional right to testify.

The district court based its decision on Fed. R. Evid. 609, which approves, for the purpose of attacking a witness's credibility, admission of prior convictions of crimes punishable by imprisonment for more than a year if "the probative value of admitting th[e] evidence outweighs its prejudicial effect." Dillard does not base his argument on Rule 609, perhaps because he is aware of the Supreme Court's holding in Luce v. United States, which apparently forecloses the issue:

> a defendant who does not testify at trial may not challenge on appeal an in limine ruling respecting admission of a prior conviction for purposes of impeachment under Rule 609(a) of the Federal Rules of Evidence.

469 U.S. 38, 43 (1984) (Brennan, J., concurring). Dillard contends instead that evidence of the prior convictions should have been barred under Rule 404(b) because it was unnecessary and relevant to no issue other than character.**2**

Regarding relevance, Dillard asserts that the "convictions were clearly outside the conspiracy at issue in the trial and therefore clearly had no tendency whatsoever to prove Dillard's guilt in the case at bar." Regarding necessity, he states:

> because the evidence was clearly not necessary to prove the conspiracy, or any other element of the case, it cannot be said that the evidence of Dillard's prior convictions was necessary.

Both assertions are true, but irrelevant. Admissibility under Rule 609 is based not on probity of guilt, but on relevance to a witness's credibility. Credibility is an issue other than character, so evidence neces-

_____

**2** We assume without deciding that Luce does not preclude Dillard's 404(b) argument.

8

sary to prove lack of credibility satisfies Rule 404(b). Dillard fails to argue that his prior convictions were irrelevant to his credibility, so his appeal of this issue is meritless.

6.

Appellants assert that, "where the government wishes to impeach a witness using specific instances of misconduct[by the defendant], it must have some good faith factual basis for the incidents inquired about." The prosecutors violated that requirement, the appellants contend, because they were not prepared to impeach negative responses to their questions about such instances. This court reviews a trial court's evidentiary rulings for abuse of discretion. Heater, 63 F.3d at 320.

Appellants misconstrue the standard. They are correct that a cross-examiner must have a "good faith factual basis" for questions about a defendant's prior acts. As we noted above, however, there is no requirement that an attorney impeach negative answers. See supra part II.A.4 (citing Michelson, 335 U.S. at 481 & n.18). Appellants do not argue on appeal that prosecutors lacked a good-faith basis for the questions. Nor is there any indication that they presented that argument below, when the district court could have conducted a factual inquiry into the basis for the questions. Thus they have failed to show abuse of discretion.

B.

Lamarr and Mallory contend that their trial should have been severed because each wanted to call the other as a witness regarding their reasons for being in Virginia. A district court's denial of a motion to sever may be reversed only for clear abuse of discretion. United States v. Rhodes, 32 F.3d 867, 872 (4th Cir. 1994), cert. denied, 115 S. Ct. 1130 (1995).

In United States v. Parodi, this court set clear parameters to govern severance for the purpose of obtaining testimony from co-defendants:

> [T]he moving defendant must establish (1) a bona fide need for the testimony of his co-defendant, (2) the likelihood that

9

the co-defendant would testify at a second trial and waive his Fifth Amendment privilege, (3) the substance of his co-defendant's testimony, and (4) the exculpatory nature and effect of such testimony.

703 F.2d 768, 779 (4th Cir. 1983) (citations omitted). These appellants fail to establish any of Parodi's requirements. They indicate that the testimony would have concerned their purpose for being in Virginia, but they do not indicate what that purpose was; thus there is no way for the court to determine the substance of the testimony, whether it was necessary, or whether it would have been exculpatory. Moreover, although they assert that each could have testified at the trial of the other, they say nothing about the likelihood that either actually would have waived his privilege. The appellants have presented no information about the arguments they made to the district court in support of the motion to sever, so we cannot know whether those arguments satisfied Parodi. In sum, Lamarr and Mallory offer no indication that the district court abused its discretion by denying their severance motions.

C.

Mallory contests the amount of cocaine that the district court attributed to him. In a district court's application of the Sentencing Guidelines, its factual findings are reversible only if clearly erroneous. See 18 U.S.C. § 3742. Questions of law, however, are reviewed de novo. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). A defendant's Base Offense Level under the Guidelines is determined by the amount of drugs "reasonably foreseeable to him within the scope of his unlawful agreement." United States v. Irvin, 2 F.3d 72, 77 (4th Cir. 1993), cert. denied, Gonzalez v. United States, 114 S. Ct. 1086 (1994); United States Sentencing Commission, Guidelines Manual, § 1B1.3(a)(1)(B), comment 2(c) (1994). The sentencing judge applies a preponderance of evidence standard, United States v. Brooks, 957 F.2d 1138, 1148 (4th Cir.), cert. denied, 112 S. Ct. 3051 (1992), and must make individualized findings, estimating the amount reasonably foreseeable to each co-conspirator. U.S.S.G. § 1B1.3(a)(1) & comment 2.

The district court adopted the presentencing report's calculation that Mallory was responsible for approximately six kilograms of

10

cocaine. Mallory argues that the estimate erroneously relied on "the uncorroborated and contradictory testimony of [a] co-conspirator"-- Joseph Manns. He relies most heavily on United States v. Sepulveda, in which the First Circuit vacated a sentence because the district court relied on testimony from the guilt phase of trial that addressed quantities of drugs only generally. 15 F.3d 1161, 1198 (1st Cir. 1993), cert. denied, 114 S. Ct. 2714 (1994). But the Sepulveda court did not challenge the district court's determination that the witness was credible; it held that "where uncertainty reigns" about the amount of drugs involved in a conspiracy, courts should "err on the side of caution." Id.

Manns acknowledged that he did not keep business records, but he described the frequency of his trips to and from New York and the amount of cocaine he typically purchased for resale in Virginia:

> Q During the time that you were involved with Mr. Mallory and Mr. Lamarr, how often were you going to New York to get cocaine?
>
> A Anywhere from two to three times a month.
>
> Q And how much were you bringing back?
>
> A Anywhere from a key and a half or less.
>
> &ast; &ast; &ast;
>
> Q Tell me then, how many trips did you and Mr. Mallory make down here from May through June of 1993?
>
> A I can't say the exact amount, but I figure it was about six or seven trips.

The court's conclusion was based on Manns's lowest estimate of the number of trips--six--and one kilogram of cocaine per trip. The amount per trip was consistent with Manns' statement that he brought back "a key and a half or less" each time, and with his estimate that he brought back about two kilograms per month during the entire nine-month period in which he was travelling to New York:

11

Q How much cocaine did you bring down here [from] November '92 through August '93, sir?

An approximation would be sufficient.

A Maybe about eighteen, nineteen keys.

The district court's estimate is inexact, but does not rise to the level of uncertainty about which the Sepulveda court was concerned. In Sepulveda, the witness merely had used ranges to estimate amounts and the number of trips, and the court guessed the total by using the midpoints of those ranges. In this case, however, the district court used the low end of the range to estimate the number of trips and estimated the amount per trip consistently with the witness's testimony regarding both the amount per trip and the total amount transported during the duration of the conspiracy. As the First Circuit itself noted, Sepulveda was an exceptional case, and its holding should not be construed broadly:

> In our view, a sentencing court remains free to make judicious use of properly constructed averages and, ultimately, to make any finding that the record supports. . . . Here, however, the record does not justify the district court's findings concerning the drug quantities.

15 F.3d at 1199 (citations omitted). The record in this case supports the district court's estimate. Thus the estimate is not clearly erroneous, and Mallory's sentence should stand.

D.

All of the appellants argue that there was insufficient evidence to support their convictions. A conviction may be reversed for insufficient evidence only if, viewed in the light most favorable to the government, the evidence was so insubstantial that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hamling v. United States, 418 U.S. 87, 124 (1974). Appellants' chief sufficiency argument is a challenge to the validity of Manns' testi-

mony. Because Manns hoped to earn a motion for substantial assistance, they argue, his testimony was "non-credible and non-worthy of belief." That argument clearly must fail, for a fundamental rule of the jury system is that "this court is bound by the `credibility choices of the jury.'" United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

Secondarily, the appellants argue that there was insufficient evidence to support defendant Dillard's conviction of possession with intent to distribute crack. They contend that the amount he possessed --5.72 grams--was "consistent with personal use." In United States v. Fisher we held that quantity is important in determining intent:

> Intent to distribute may be inferred from possession of . . . a quantity of drugs larger than needed for personal use. Possession of a small quantity of drugs by itself is an insufficient basis from which intent to distribute may be inferred.

912 F.2d 728, 730 (4th Cir. 1990) (citations omitted), cert. denied, 500 U.S. 919 (1991). More recently, we have held twice that the inference of intent to distribute is supported by quantities of approximately thirteen grams of crack. United States v. Bell, 954 F.2d 232, 235 (4th Cir. 1992) ("thirteen plus grams"), cert. denied, Cruz v. United States, 114 S. Ct. 112 (1993); United States v. Smith, 966 F.2d 1446, 1992 WL 138355, at *1 (4th Cir. 1992) (per curiam) (unpublished) ("12.79 grams").

We noted in Smith that "crack is normally distributed in doses of 1/10 of a gram and that a person ingesting a dose daily would be considered a `strong' user." 966 F.2d 1446, 1992 WL 138355 at *1; accord Bob Martinez, Director, Office of National Drug Control Policy, The Case for Mandatory Minimum Sentences , Wash. Post, June 30, 1992, at A18 (Letters to the Editor) ("[F]ive grams is the equivalent of 50 street doses of crack. Anybody holding that much crack is dealing and ought to be punished accordingly."). Thus Dillard possessed roughly the amount of crack that a "strong" user would ingest in two months. Combined with Manns' testimony that Dillard was a crack dealer, the amount in question was sufficient evidence to support the jury's inference of intent to distribute beyond a reasonable doubt.

13

E.

The court instructed the jury about entrapment. Dillard contends that there was insufficient evidence for the jury to conclude that he was not entrapped. According to the appellants' brief, "[w]here a person has no previous intent or purpose to violate the law, but is induced or persuaded by law enforcement officers or their agents to commit a crime, he is a victim of entrapment." Dillard concludes that he was a victim of entrapment because

> there was substantial evidence that [he] was persuaded and induced by Manns, acting as an agent of the law enforcement officers who apprehended [Manns], to come to the motel to attempt to knowingly and intentionally possess with intent to distribute cocaine.

The appellants' brief incorrectly states the law of entrapment. We stated the correct standard last year in United States v. Harrison:

> "[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." While the question of whether a defendant has been entrapped is generally one for the jury, when government agents merely offer an opportunity to commit the crime and the defendant promptly avails himself of that opportunity, an entrapment instruction is not warranted.

37 F.3d 133, 136 (4th Cir. 1994) (quoting Mathews v. United States, 485 U.S. 58, 63 (1988)) (citing Jacobson v. United States, 112 S. Ct. 1535, 1541 (1992)). Dillard's argument is based entirely on the first element: Manns, acting as a government agent, induced Dillard's crime. Dillard neither argues nor points to evidence of the second element--that he lacked the predisposition to commit the offense. In fact, his situation fits exactly Harrison's holding that, as a matter of law, there is no entrapment when police merely offer an opportunity of which a defendant avails himself:

> Upon contact with Dillard, Manns offered to sell Dillard seven (7) ounces of cocaine for $6,000. This was done with

14

the apparent knowledge of and at the request of the police. According to Manns, Dillard agreed to the aforesaid proposed transaction and thereafter Dillard was apprehended in the motel room which Manns told him (Dillard) to come to allegedly purchase drugs.

Because Dillard has not even met the requirements for an instruction on entrapment, the jury's rejection of the defense was supported by the evidence.

III.

We find no reversible error. Accordingly, we affirm the convictions and Mallory's sentence.

AFFIRMED

15