**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4166

DOVON BROWN, a/k/a Capone,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Malcolm J. Howard, District Judge.
(CR-95-144-H)

Submitted: September 30, 1997

Decided: November 5, 1997

Before HALL, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Richard L. Cannon, III, Greenville, North Carolina, for Appellant.
Janice McKenzie Cole, United States Attorney, Thomas B. Murphy,
Assistant United States Attorney, Raleigh, North Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Dovon Brown appeals from his conviction and sentence for conspiring to distribute and to possess with the intent to distribute cocaine base in violation of 21 U.S.C. § 846 (1994). He was sentenced to life imprisonment and five years of supervised release if released from imprisonment. For the following reasons, we affirm.

I

The evidence at Brown's trial showed that during the course of investigating Brown, a detective arrested Kenneth Wilson, who became a cooperating Government witness. In July 1995, at the direction of the detective, Wilson made two recorded telephone calls to Brown, which were submitted into evidence. During the second phone call, Wilson first spoke to an unknown female, later identified as Lottie Renee Watts. During the conversation, Brown and Wilson referred to an individual named Roland, who was later identified as Roland Pearson, another cooperating Government witness. Although Brown and Wilson discussed various sums of money for the purchase of certain items, neither specifically mentioned drugs. Wilson testified that after the conversation he expected Brown to deliver three ounces of cocaine to him for $1200 an ounce.

Wilson further testified that he bought cocaine from Brown for his own drug distribution business. Wilson stated that between April and July 1995, he had between one and two dozen drug transactions with Brown and bought between twelve and thirteen ounces of cocaine base for $1000 to $1300 an ounce.

Watts testified that she sold cocaine for Brown during the summer of 1995 and there were other people selling cocaine for Brown at that time. She sold between thirty and thirty-five ounces of cocaine base for Brown. She further testified that at times Brown would front her the cocaine for sale and after the sale she would give Brown the proceeds. Watts stated that she was supplied with cocaine either directly from Brown or through Frederick Sutton. Watts also observed Brown

2

display a gun during an altercation involving drugs. On a second occasion, she heard a gun shot and ran out of the house, where she found Brown with a gun. Sutton testified that he also distributed cocaine for Brown.

Roland Pearson testified that Brown began fronting him cocaine in April 1995. He sold the drugs and gave Brown the proceeds. Brown fronted Pearson three or four one-half ounce quantities of cocaine base a week for eight to ten weeks. Pearson further testified that on one occasion when Brown was questioning certain individuals about unaccounted-for cocaine, he saw Brown brandish a firearm when those present failed to explain the disappearance of the cocaine.

Marvin Johnson testified that in 1995 Brown asked him to help him start a cocaine base business in Plymouth, North Carolina. In April 1995, Brown fronted three ounces of cocaine to Johnson and Johnson gave Brown $3000 after he sold the drugs.

II

On appeal, Brown claims that: (1) the evidence was insufficient to support his conspiracy conviction; (2) the submission of the taped conversations unfairly prejudiced him; (3) the quantity of drugs attributed to him in determining his base offense level was erroneous; (4) the evidence was insufficient to sustain a two-level enhancement for use of a firearm in connection with a drug offense; and (5) the evidence was insufficient to sustain a four-level enhancement for his role in the offense.

Brown first claims that the evidence was insufficient to support his conspiracy conviction because it consisted of unrelated isolated transactions with various individuals without any common scheme or organization. Brown alleges that the Government presented a string of witnesses who testified to their individual dealings with Brown at various times prior to and after the commencement of the alleged conspiracy but that there was no description of any organization led by Brown. In essence, Brown contends that the Government failed to demonstrate the level of agreement necessary to prove a conspiracy between Brown and any of the named individuals.

3

On direct appeal of a criminal conviction, a "verdict must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). A conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced and may be proved wholly by circumstantial evidence. United States v. Burgos, 94 F.3d 849, 857-58 (4th Cir. 1996), cert. denied, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868).

A conspiracy to possess cocaine with intent to distribute is established when: "(1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." Id. The conspirator's agreement and his participation in the conspiracy may both be proved by circumstantial evidence. Id. Circumstantial evidence tending to prove a conspiracy may consist of a defendant's "relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984). Further, a variety of conduct, apart from selling drugs, can constitute participation in a conspiracy sufficient to support a conviction. Burgos, 94 F.3d at 859.

The focus of appellate review of the sufficiency of evidence to support a conspiracy conviction is on the complete picture, viewed in context and in the light most favorable to the Government, that all of the evidence portrayed. Id. at 863.

The testimony from Wilson, Watts, Sutton, Pearson, and Johnson was sufficient to support Brown's conviction. Although the evidence included uncorroborated testimony and contradictory testimony, it is well established that the jury, not the appellate court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented, and if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe. Id. at 862. Likewise, determinations of credibility are within the sole province of the jury and are not susceptible to judicial review. Id. at 863. Brown contends that the evidence merely shows a string of buyer-seller relationships which is insufficient to support a conspiracy con-

4

viction. However, the evidence of repeated buy-sell transactions involving substantial quantities of drugs supports a reasonable inference that the parties were co-conspirators. See United States v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993). Further, keeping in mind that a conspiracy can be loosely-knit, haphazard, or ill-conceived, we find that, viewing the evidence of the continuing relationships and repeated transactions in the light most favorable to the Government, any rational trier of fact could find Brown guilty of conspiracy to distribute and possess with intent to distribute beyond a reasonable doubt. See Glasser, 315 U.S. at 80; Burgos, 94 F.3d at 858.

Brown next claims that he was unfairly prejudiced by the admission into evidence of taped conversations between Brown and Wilson. Brown contends that because Wilson was acting as a Government agent during the taped conversations, he could not have been a coconspirator. See United States v. Chase, 372 F.2d 453, 459 (4th Cir. 1967). He further notes that for tape recorded statements of a co-conspirator to be admitted into evidence and not excluded as inadmissible hearsay, a district court must find that: (1) there was a conspiracy involving the declarant and the party against whom admission of the evidence is sought; and (2) the statements at issue were made during the course of and in furtherance of that conspiracy. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992); see also Fed. R. Evid. 801(d)(2)(E).

The record reveals that the district court admitted the tape-recorded conversation as an admission pursuant to Fed. R. Evid. 801(d)(1). The voices of Watts and Wilson were on the tape. They both testified at trial and were subject to cross examination. Further, their statements on the tape were consistent with their testimony and rebutted any charge that they were testifying under an improper influence or motive. See id. The evidence showed that prior to Wilson's arrest, he was a drug-dealing colleague of Brown. During the taped conversation, Brown agreed to sell and Wilson agreed to buy three ounces of cocaine. Accordingly, we find that the district court did not abuse its discretion in admitting the taped conversations. See Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1383 (4th Cir. 1995) (discussing standard of review for evidentiary rulings).

Next, Brown contends that the district court improperly found that Brown was responsible for in excess of 1.5 kilograms or 1500 grams

5

of cocaine base. Brown argues that the amount found by the district court is erroneous.

The Government bears the burden of proving the quantity of drugs for which a defendant is to be held responsible at sentencing by a preponderance of the evidence. See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). The district court's factual determination concerning the amount of drugs attributable to appellant should be upheld absent clear error. See United States v. Lamarr, 75 F.3d 964, 972 (4th Cir. 1996), cert. denied, 65 U.S.L.W. 3309 (U.S. Oct. 21, 1996) (No. 95-9398); United States v. D'Anjou , 16 F.3d 604, 614 (4th Cir. 1994). Furthermore, as a member of the conspiracy, Brown is accountable for all of the drugs reasonably foreseeable to him. See United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993); Gilliam, 987 F.2d at 1012-13. Because the amount of drugs seized did not reflect the scale of the offense, the district court was allowed to estimate the amount attributable to Brown. See United States v. Kennedy, 32 F.3d 876, 887 (4th Cir. 1994).

In the present case, there was ample evidence to support the trial judge's decision. Several coconspirators testified to the amount of drugs with which Brown was involved. Wilson testified that he purchased twelve to thirteen ounces of cocaine base from Brown. The conservative estimate of twelve ounces equates to 340 grams of cocaine base. See U.S. Sentencing Guidelines Manual § 2D1.1(c)(10), (Measurement Conversion Table) (Nov. 1995) (one ounce equals 28.35 grams). Watts testified that she sold between thirty and thirty-five ounces of cocaine base for Brown. The conservative estimate of thirty ounces equates to 850 grams of cocaine base. Brown did not object to the ninety-five grams of cocaine base attributed to him from his association with Sutton. Pearson testified that he received two quarter-ounce quantities of cocaine base from Brown, which equates to approximately fourteen grams. Pearson further testified that he received three to four half-ounce packages of cocaine base a week for about eight to ten weeks. Using a conservative estimate of three half-ounce quantities a week for eight weeks equates to twelve ounces or 340 grams of cocaine base. Lastly, Johnson testified that he purchased three ounces or eighty-five grams of cocaine powder from Brown. Johnson further testified that he saw Brown purchase nine ounces or 255 grams of cocaine powder. Thus, with regard to Johnson, the court

6

attributed 340 grams of cocaine powder to Brown, which was reduced to 299 grams of cocaine base using an eighty-eight percent conversion ratio. See United States v. Ricco, 52 F.3d 58, 63 (4th Cir. 1995), cert. denied, 64 U.S.L.W. 3247 (U.S. Oct. 2, 1995) (No. 95-5502). The amounts add up to be substantially more than 1500 grams of cocaine base. It is irrelevant that the district court's calculation of the total amount of cocaine base was higher because under the guidelines any amount over 1.5 kilograms of cocaine base results in a base offense level of 38. See U.S.S.G. § 2D1.1(c) (Drug Quantity Table). Thus, we find that the district court did not clearly err when it determined that the Government had proven, by a preponderance of the evidence, that more than 1500 grams of cocaine base were attributable to Brown. See Lamarr, 75 F.3d at 972.

Brown next alleges that the evidence was insufficient to sustain a two level enhancement for use of a dangerous weapon during a drug offense. The sentencing guidelines provide that,"[i]f a dangerous weapon (including a firearm) was possessed, increase[the offense level] by 2 levels." See U.S.S.G.§ 2D1.1(b)(1). A defendant "possesses" a firearm if the weapon was merely "present, unless it is clearly improbable that the weapon was connected with the offense." United States v. Hunter, 19 F.3d 895, 896 (4th Cir. 1994). There is no requirement that a defendant actively employ a firearm in order to qualify for the enhancement. See United States v. Hawthorne, 94 F.3d 118, 122 (4th Cir. 1996). Because the determination that a firearm was present so as to justify an enhancement is a factual question, this Court reviews the determination for clear error. See United States v. Rusher, 966 F.2d 868, 880 (4th Cir. 1992). Both Watts and Pearson testified that they observed Brown with a gun during an altercation involving drugs. The district court specifically found that this testimony was credible. Therefore, we find that the district court did not clearly err when it determined that the Government had proven, by a preponderance of the evidence, that Brown possessed a firearm during a drug offense.

Lastly, Brown contends that the evidence was insufficient to sustain a four-level enhancement for his role in the offense. The sentencing guidelines provide for a four-level enhancement where a defendant was a leader or organizer of criminal activity that involved five or more participants or was otherwise extensive. See U.S.S.G.

§ 3B1.1(a). To qualify for this enhancement, the defendant must have been a leader or organizer of at least one of the participants to the criminal activity. See U.S.S.G. § 3B1.1, comment. (n.2). The Government was required to prove Brown's role in the offense by a preponderance of the evidence. See McMillan v. Pennsylvania, 477 U.S. 79, 91 (1986). Furthermore, the sentencing court's determination that Brown is an organizer or leader is subject to the clearly erroneous standard of review. See United States v. Smith , 914 F.2d 565, 569 (4th Cir. 1990).

The district court found in this case that Brown was the organizer or leader of five or more individuals and that there was extensive activity. Watts testified that "around six" people other than herself sold cocaine for Brown. Watts further testified that she saw Brown with pagers, cellular phones, large amounts of cash, and multi-ounce quantities of cocaine. Sutton and Pearson also testified that they sold drugs for Brown. Johnson testified that Brown asked him to set up drug sales in another area. Therefore, we find that the district court did not clearly err when it determined that the Government had proved, by a preponderance of the evidence, that Brown was an organizer or leader of criminal activity that involved five or more participants, subjecting him to the four-level enhancement.

Accordingly, we affirm Brown's conviction and sentence. We deny Brown's motions to file supplemental pro se briefs because his counsel's formal brief sufficiently states his claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8