**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4917

DOUGLAS FARREL TINKER,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Robert E. Payne, District Judge.
(CR-96-62)

Submitted: November 25, 1997

Decided: January 28, 1998

Before ERVIN and MICHAEL, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Alan H. Yamamoto, Alexandria, Virginia, for Appellant. Helen F.
Fahey, United States Attorney, Marcus J. Davis, Assistant United
States Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Douglas Farrel Tinker appeals his convictions for possession of a firearm by a convicted felon, 18 U.S.C.A. § 922(g)(1) (West Supp. 1997), and aiding and abetting false statements to a licensed firearms dealer, 18 U.S.C.A. §§ 924(a)(1)(A), (a)(2) (West Supp. 1997). Tinker also appeals his concurrent sentences of thirty-three months. We affirm.

I

The convictions arise from the straw purchase by Tinker's girlfriend of a semi-automatic pistol. Tinker, a convicted felon, asked his girlfriend to make the purchase. At first she was reluctant, but she relented when Tinker threatened to end their relationship if she refused his request. Tinker telephoned a federally licensed firearms dealer about purchasing a gun. He informed the dealer that he could not place the pistol in his own name, and that his girlfriend would buy the gun. Suspicious, the dealer contacted federal agents, who told him to proceed with the sale. The dealer then telephoned Tinker to set up an appointment.

Tinker drove his girlfriend to the store. At his direction, she ordered a Glock 9 mm. semi-automatic pistol. The purchase price of the gun was $488.53. Tinker paid $400; his girlfriend contributed the remainder of the purchase price. Tinker gave the dealer his name and telephone number so that the dealer could contact him when the gun arrived. Tinker's girlfriend received a receipt for the purchase in her name.

The dealer contacted Tinker when the pistol arrived. Tinker and his girlfriend went to pick the gun up. Tinker's girlfriend executed the transaction. Tinker drove her to her residence and continued, with the pistol, to his home. After agents confronted him, he confessed that he had threatened his girlfriend that he would withhold his affection if she did not make the purchase for him.

2

At trial, the dealer, Tinker's girlfriend, and a police officer who had participated in the surveillance of Tinker on the day he picked up the gun testified. Tinker stipulated to a felony conviction in Texas. He also stipulated that the gun was a firearm as defined in 18 U.S.C. § 921(a)(3) (1994) and that it had been shipped or transported in interstate commerce.

Tinker testified in his defense. He admitted to having his girlfriend make the straw purchase, admitted to felony convictions in Texas and Illinois, and claimed that he had purchased the gun for use in an anticipated new career as a bodyguard.

II

Tinker acknowledged, in response to his attorney's question on direct examination, that he was convicted of a felony in Alexandria, Virginia, after the straw purchase. On cross-examination, the prosecutor informed the court that he wished to pose a question about that "felony narcotic conviction." The district court did not permit the prosecutor to ask the question. Tinker contends now that the district court should have either instructed the jury to disregard the statement or declared a mistrial. Tinker maintains that the statement implied that the straw purchase also was drug-related, thereby prejudicing his chance for a fair trial. Because Tinker did not object, our review is for plain error. See Fed. R. Civ. P. 52(b); United States v. Lamarr, 75 F.3d 964, 969 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3309 (U.S. Oct. 21, 1996) (No. 95-9398).

Tinker opened the door to this interchange when he testified on direct that he had been convicted of the felony. See United States v. Boyce, 611 F.2d 530, 530-31 (4th Cir. 1979). In any event, the discussion occupied only a few moments of a trial in which overwhelming, eyewitness testimony was offered against Tinker. In these circumstances, there was no danger that the remark so infected the trial as to result in a miscarriage of justice, and there was no plain error. See Lamarr, 75 F.3d at 969.

III

Prior to trial, persons apparently acting on Tinker's behalf distributed to potential jurors a pamphlet on jury nullification. Tinker asserts

3

that the district judge erred when he inquired whether the potential jurors could put aside what they might have read in the pamphlet and reach a verdict based on the evidence presented at trial. Again, as Tinker did not object to this inquiry, our review is for plain error. See United States v. Moore, 11 F.3d 475, 481 (4th Cir. 1993).

The question was entirely appropriate. "Although a jury is entitled to acquit on any ground, a defendant is not entitled to inform the jury that it can acquit him on grounds other than facts in evidence, i.e. a jury has the power of nullification, but defense counsel is not entitled to urge the jury to exercise that power." United States v. Muse, 83 F.3d 672, 677 (4th Cir.), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3264 (U.S. Oct. 7, 1996) (No. 96-5589). Nor should others acting on behalf of a defendant be entitled to encourage jury nullification. The district judge acted properly when he ascertained that the potential jurors would decide the case on the facts presented at trial and the law as given by the court.

IV

Tinker raises four challenges to his sentence. He asserts that he was entitled to a reduction in his base offense level under U.S. Sentencing Guidelines Manual § 2K2.1(b)(2) (1995) because he allegedly used the pistol solely for lawful sporting purposes. Tinker represented both at trial and at sentencing that he intended to use the gun for target practice until he secured a job as a bodyguard. We review the district court's factual determination that the firearm was not intended solely for sporting use for clear error. See United States v. Daughtrey, 874 F.2d 213, 217-18 (4th Cir. 1989). Possessing a gun that one hopes to use in future employment does not constitute a sport. See United States v. Gresso, 24 F.3d 879, 880-81 (7th Cir. 1994). The district court's determination was not clearly erroneous.

Tinker maintains that he was entitled to a reduction in his offense level for acceptance of responsibility. However, a defendant who puts the government to its proof at trial is rarely entitled to the reduction. See USSG § 3E1.1, comment. (n.2). The facts of this case do not warrant a deviation from the general rule, and the district court's refusal to reduce the offense level was not clearly erroneous. See United States v. Miller, 77 F.3d 71, 74 (4th Cir. 1996).

4

Nor did the district court clearly err in enhancing Tinker's offense level by two levels upon the determination that he was a leader or supervisor of the crime. See USSG § 3B1.1(c); United States v. Melton, 970 F.2d 1328, 1334 (4th Cir. 1992). Tinker readily admitted that he recruited his girlfriend to make the straw purchase and that he overcame her initial hesitancy by threatening to withhold his affection.

Finally, Tinker argues that the district court abused its discretion in refusing to depart downward from his guideline range because his case lies outside the heartland of typical felon-in-possession cases. We are without jurisdiction to review the district court's failure to depart. See United States v. Bayerle, 898 F.2d 28, 30-31 (4th Cir. 1990).

V

We accordingly affirm Tinker's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5