**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 12-4396**

─────────────

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

THEOPHILUS AKWEI,

        Defendant – Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Senior District Judge. (1:11-cr-00199-JCC-6)

─────────────

Argued: February 1, 2013        Decided: March 14, 2013

─────────────

Before NIEMEYER, DUNCAN, and DIAZ, Circuit Judges.

─────────────

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Niemeyer and Judge Diaz joined.

─────────────

**ARGUED:** Gregory E. Stambaugh, GREGORY E. STAMBAUGH LAW OFFICE, Manassas, Virginia, for Appellant. James Philip Gillis, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

This appeal arises from Theophilus Akwei's conviction on three heroin-related counts. Akwei contests the sufficiency of the evidence sustaining his convictions. He also challenges aspects of his trial and sentencing, including the district court's evidentiary rulings, flight instruction, denial of his motion for a minor role adjustment, and forfeiture order. For the reasons that follow, we affirm the judgment of the district court.

I.

A.

Akwei is a resident of Maryland and native of Ghana. His convictions arise from his involvement with the "Macauley" organization, a Ghanaian heroin smuggling operation commanded by Edward Macauley. In 2010 and 2011, Macauley directed members of the conspiracy based in Ghana, including Frank Ehiobu, to arrange heroin shipments from Ghana to the United States.

In February 2011, Ehiobu and Macauley planned a shipment in which Emmanuel Annor, a courier who was working as an undercover Drug Enforcement Agency ("DEA") informant, took a carry-on bag containing heroin from Accra, Ghana to Washington, D.C. There, a second courier was supposed to pick the bag up and transport it to the appropriate seller. When Annor arrived in Washington

on February 21, however, the second courier failed to appear, and Annor proceeded to an Alexandria, Virginia hotel with the heroin-laden bag. Ehiobu promised to send someone else to collect the drugs.

On the evening of February 21, Akwei had Joseph Duodo, an associate familiar with northern Virginia, drive him to the Alexandria hotel to meet Annor. Akwei and Annor verified each others' identities by telephoning Ehiobu in Ghana; Annor recorded the calls. Akwei greeted Ehiobu as "Uncle Frank" and Ehiobu told Annor, "[i]t's him." J.A. 74. The pair discussed how Annor would transfer the bag to Akwei, who promised to "pay [Annor] the money later." Id. After several more phone calls to Ehiobu, Annor placed the bag in the back of Duodo's car.

Shortly after the pick-up, the DEA directed local officers to stop Akwei and Duodo and arrest them. The arresting officers recovered the bag, which contained 988.8 grams of heroin.

On February 22, while Ehiobu remained unaware of Akwei's arrest, he and Annor discussed Akwei's whereabouts in another recorded phone call. Annor told Ehiobu that Akwei never returned with money, and Ehiobu assured Annor that Akwei was "our boy," that he "kn[e]w him very well," and that "[e]verybody

knows him. Director, everybody. . . . He's one of his [Director's] boys."[1]  J.A. 84–85.

In another February 22 telephone call, Ehiobu talked with a second confidential informant, Augustine Ani, to whom Ehiobu had promised a "100–200" gram heroin sample.  J.A. 611.  Ehiobu described the drug pick-up, referred to Akwei as "my boy," and told Ani that Akwei "is the guy" who "took money to New York for me" "the last time."  Id. at 98.  Ehiobu told Ani that "[w]hat [Akwei] does is run errands for me," including collecting and delivering items such as the bag and money.  Id. at 102.  When Ani expressed concern over Akwei's trustworthiness, Ehiobu explained that Akwei "has not done this [disappeared] to me before."  Id. at 105.

On March 18, 2011, the government released Akwei to protect the ongoing investigation of the larger conspiracy, dismissing the charges against him without prejudice.  On July 14, 2011, federal agents began a series of coordinated global arrests related to the Macauley organization.  DEA agents arrived at Akwei's front door before six a.m.  Akwei's wife answered.  She led officers upstairs, where she said Akwei was sleeping.  Meanwhile, Special Agent Mark Murtha, who was positioned behind

---

[1] "Director" is one of many names used to refer to Edward Macauley.

4

the house, saw Akwei open the basement door, peer outside, and exit the home.  Agent Murtha arrested Akwei, who was wearing a light shirt, sweat pants, gym shoes, and no underwear.  Akwei claimed he was on his way to work, but subsequently admitted he began work later in the day.  Agents searched his residence and seized $3200 in cash.

## B.

On August 24, 2011, a federal grand jury returned a six-count superseding indictment against eight Macauley coconspirators alleging involvement in a series of heroin importation efforts.  The three counts involving Akwei charged him with conspiracy to import heroin, 21 U.S.C. § 963, (the "conspiracy count"), distribution for the purpose of unlawful importation of heroin, 21 U.S.C. §§ 959(a), 960, (the "distribution count"), and possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1), (the "possession count"), based on his involvement in the conspiracy and participation in the February 21, 2011 transaction in particular.  Ehiobu and several alleged Macauley coconspirators pleaded guilty and testified for the government at Akwei's trial.  The two confidential informants, Annor and Ani, also testified.

At trial, Ehiobu affirmed that Akwei had agreed to pick up the bag and knew it contained heroin.  Annor and Ani testified to the recorded phone conversations.  Ani explained that he

5

understood Ehiobu's description of Akwei as someone who "run[s] errands" to mean that Akwei performed drug-related messenger and courier work for Ehiobu. Evidence further revealed that the Macauley organization had orchestrated three other heroin importation efforts in 2010 and 2011, each involving a courier transporting over one kilogram of heroin from Ghana to the United States. The government presented evidence that Akwei and Macauley knew each other by submitting Macauley's phone contact list, which, at the time of Macauley's arrest, contained Akwei's name and phone number. Agent Murtha testified to Akwei's behavior on the morning of his July 14 arrest, describing how "mounds of clothes" and "other debris" blocked the path through the basement to the back door where Akwei exited. J.A. 587.

After trial, Akwei moved for judgment of acquittal with respect to his conspiracy conviction, challenging the sufficiency of the evidence supporting the jury's conclusion that the conspiracy involved one or more kilograms of heroin. Akwei also moved for a new trial, arguing that the evidence of his behavior on the morning of his July 14 arrest insufficiently supported the flight instruction the district court gave the jury.

The district court found that sufficient evidence supported the conclusion that Akwei could have foreseen that the conspiracy involved a kilogram or more of heroin, considering

6

that the bag Akwei picked up contained 988.8 grams and that recorded conversations revealed that he ran "errands" for Ehiobu. With respect to the flight instruction, the court found Akwei's attempt to flee sufficiently related to his consciousness of guilt of the heroin importation crimes at issue to support the instruction.

Consistent with the forfeiture notice included in the indictment, the government moved for a preliminary order of forfeiture pursuant to 21 U.S.C. § 853(a) and Federal Rule of Criminal Procedure 32.2. It sought a $5,000 judgment against Akwei and forfeiture of the $3,200 seized during his arrest to partially satisfy that judgment.[2] Akwei argued that he never received proceeds from his participation in the conspiracy. The court granted the forfeiture order after finding the requisite nexus between the $5,000 judgment and Akwei's offense and applied the $3,200 to the judgment as "substitute property." J.A. 991; 21 U.S.C. § 853(p).

The district court denied Akwei's motion for a minor role adjustment and sentenced him to the mandatory minimum of ten years' imprisonment for his conspiracy conviction, as well as

---

[2] Although trial testimony established the street value of a kilogram of heroin at between $70,000 and $120,000, the government sought only $5,000 from Akwei.

ninety-seven months each on the distribution and possession convictions, to run concurrently.  This appeal followed.

## II.

On appeal, Akwei contends that the district court (1) erred in holding that sufficient evidence supported his convictions, particularly with regard to whether he could have foreseen that the conspiracy involved a kilogram or more of heroin; (2) abused its discretion in allowing evidence of Macauley's phone contact list; (3) abused its discretion in allowing evidence of flight and giving a flight instruction; (4) erred in entering the forfeiture order; and (5) erred in denying his motion for a minor role adjustment.  We consider each contention in turn.

### A.

We review the denial of a motion for judgment of acquittal de novo.  <u>United States v. Penniegraft</u>, 641 F.3d 566, 571 (4th Cir. 2011).  In so doing, we "construe the evidence in the light most favorable to the government, assuming its credibility, and drawing all favorable inferences from it, and will sustain the jury's verdict if <u>any</u> rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt."  <u>Id.</u>  (citation omitted).  Further, we "cannot make [our] own credibility determinations but must assume that the

8

jury resolved all contradictions in testimony in favor of the Government." Id. at 572 (citation omitted).

1.

Akwei first challenges the sufficiency of the evidence sustaining his conspiracy, distribution, and possession convictions. In particular, he maintains that the district court erred in denying his motion for judgment of acquittal because the primary evidence connecting him to the conspiracy and to the knowledge that the bag contained heroin came from Ehiobu's trial testimony, testimony he argues is "unworthy of belief." Appellant's Br. at 13.

We have repeatedly recognized that "a fundamental rule of the jury system is that 'this court is bound by the credibility choices of the jury.'" United States v. Lamarr, 75 F.3d 964, 973 (4th Cir. 1996) (citation omitted). Even if a witness testifies hoping to receive favor for "substantial assistance," id., credibility evaluations remain the province of the jury. Further, "the settled law of this circuit recognizes that the testimony of a defendant's accomplices, standing alone and uncorroborated, can provide an adequate basis for conviction." United States v. Burns, 990 F.2d 1426, 1439 (4th Cir. 1993) (citation omitted).

Thus, the jury was entitled to evaluate Ehiobu's testimony and could have concluded that Akwei agreed to engage in the

9

conspiracy with knowledge that the scheme involved the importation and distribution of heroin. This is so even though Ehiobu testified pursuant to his plea agreement with the hope of earning a recommendation for a reduced sentence. We defer to the jury's credibility determinations with respect to Ehiobu, including consideration of his motives. Accordingly, we find that sufficient evidence supports Akwei's conspiracy, distribution, and possession convictions.

2.

With respect to the conspiracy conviction, Akwei argues that the government failed to present sufficient evidence that he could have reasonably foreseen that the conspiracy involved more than one kilogram of heroin. The government responds that the sheer amount of heroin involved in the February 21 transaction, as well as testimony identifying Akwei as someone who ran "errands" for Ehiobu in other instances, suffice to meet the weight threshold.

We agree. We have recognized that "in a drug conspiracy case, the jury must determine that the threshold drug amount was reasonably foreseeable to the individual defendant." United States v. Brooks, 524 F.3d 549, 558 (4th Cir. 2008) (citation omitted); see United States v. Collins, 415 F.3d 304, 314 (4th Cir. 2008) (holding that district court must instruct jury to use Pinkerton principles when determining the drug quantity

10

attributable to a particular defendant in a conspiracy). Although the government cannot establish the one kilogram threshold by "reasoning so attenuated" it borders on "mathematical impossibility," we continue to draw "the available reasonable inferences in favor of the government." United States v. Hickman, 626 F.3d 756, 764 (4th Cir. 2010). The government may aggregate transactions within a conspiracy to establish the weight threshold, as long as they are reasonably foreseeable to the defendant. See id. at 765 (aggregating heroin transactions to determine weight threshold for purposes of evaluating conspiracy conviction).

Like Akwei, the defendant in Hickman challenged the sufficiency of evidence that the conspiracy in which he took part involved more than one kilogram of heroin. There, officers had recovered only 176 grams of high-purity heroin,[3] and the government presented "meager" evidence of other "unknown transactions" which "offered virtually no guide as to the amounts that may have been involved." Id. at 770. Even giving the government credit for the maximum conceivable amount of heroin in those unknown transactions, the evidence still fell

---

[3] The high-purity heroin seized in Hickman would have yielded 681 street-ready grams. 626 F.3d at 765. Although the dilution evidence was unique to testimony elicited at Hickman's trial, we note that the 988.8 grams recovered in this case were high-purity, undiluted grams by Hickman standards.

11

short of the one kilogram threshold.  Id. at 766.  We therefore reversed the jury's one kilogram finding as unsupported by the evidence.

Despite Akwei's attempts to analogize his case to Hickman, here, the government presented sufficient evidence to sustain the one kilogram threshold.  The court properly instructed the jury that "a defendant is accountable for the quantity of controlled substance of heroin that he personally distributed or imported or aided and abetted others in distributing or importing or could reasonably foresee that others would distribute or import during and in furtherance of a conspiracy." J.A. 863.  The evidence clearly showed that Akwei picked up a bag containing 988.8 grams of heroin at Ehiobu's direction. Additionally, the government introduced ample evidence that Akwei knew about, and participated in, the distribution of other amounts of heroin in furtherance of the conspiracy.  In Ehiobu's recorded telephone conversations, he stated that Akwei: is "not the one who sells" but the one who "run[s] errands for me," id. at 620; is "his boy" and known to Macauley, id. at 381; is willing "to take it [the heroin] to the other boy, the boy who will sell it . . . .  Then if it is to collect money, I will send him [Akwei].  He will collect money from that person if he is told," id. at 620; "has not done this [disappeared] to me before," id. at 624; and had taken money to New York for Ehiobu

12

prior to February 2011, id. at 617. The jury justifiably concluded that Akwei could have foreseen the conspiracy involving one kilogram of heroin. The fact that Ehiobu planned to send a "100-200 gram[]" heroin sample to Ani, id. at 611, further supports this conclusion. As distinguished from Hickman, the amount of heroin recovered here combined with the specificity of evidence of Akwei's involvement in the conspiracy lead us to conclude that sufficient evidence supported the jury's weight determination.

B.

We next consider Akwei's argument that the district court abused its discretion by admitting evidence that Macauley's cell phone contact list contained Akwei's name and phone number, which Akwei contends is irrelevant. We review evidentiary rulings for abuse of discretion. United States v. Blake, 571 F.3d 331, 346 (4th Cir. 2009).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401. Although relevant evidence "'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice,'" we "review the lower court's application of this balancing test with the broad deference that the abuse

of discretion standard requires." United States v. Myers, 280 F.3d 407, 413 (4th Cir. 2002) (quoting Fed. R. Evid. 403).

The cell phone contact list is relevant because it tends to show a connection between Macauley, the undisputed kingpin of the importation operation, and Akwei. The government needed to prove at least "a slight connection between the defendant and the conspiracy" to make its case. United States v. Burgos, 94 F.3d 849, 861 (4th Cir. 1996) (citation omitted). Macauley's contact list was one way in which the government sought to connect Akwei to the conspiracy. Therefore, the district court did not abuse its discretion in admitting the relevant phone contact list.

### C.

Next, Akwei argues that the district court erred by (1) admitting evidence of his attempted flight during arrest and (2) giving a flight instruction. Essentially, Akwei contends that his July 14 flight was too minor and temporally attenuated from his initial February 21 arrest to justify a flight instruction. In response, the government argues that because Akwei knew he was under investigation for involvement in the instant offense at the time of his July 14 flight, the district court properly admitted the evidence and accordingly instructed the jury.

We review admission of evidence of flight as well as "[t]he decision to give or not give a jury instruction" for abuse of

14

discretion.  <u>United States v. Allen</u>, 491 F.3d 178, 186 (4th Cir. 2007) (citation omitted).  We will not vacate a conviction on the basis of an erroneous jury charge if, in light of the above inquiry, the charge contained an adequate statement of the law and was not misleading.  <u>Id.</u> at 187.

Evidence of an accused's flight is generally admissible as an indication of guilt.  <u>United States v. Obi</u>, 239 F. 3d 662, 665 (4th Cir. 2001) ("It cannot be doubted that in appropriate circumstances, a consciousness of guilt may be deduced from evidence of flight.").  However, evidence of flight as proof of consciousness of guilt "would be completely unfounded where a defendant flees after commencement of an investigation unrelated to the crime charged, or of which the defendant was unaware." <u>United States v. Beahm</u>, 664 F.2d 414, 420 (4th Cir. 1981) (internal quotation omitted).  Therefore, a flight instruction alerting the jury that it may infer the defendant's consciousness of guilt from his flight is only warranted when evidence supports each link in the causative chain such that the jury can draw inferences "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."  <u>Obi</u>, 239 F.3d at 665-66 (citation omitted).

15

Evidence of Akwei's flight was properly admitted at trial and supported the flight instruction. First, although Akwei correctly asserts that he did not run from the house, the evidence supports the conclusion that he fled. Agent Murtha's testimony revealed that while officers entered Akwei's home through the front door and followed his wife upstairs to conduct their early morning arrest, Akwei opened the back basement door, peered outside, and exited. The fact that Akwei sought to leave the house in sweatpants, a t-shirt, and no underwear at six in the morning after climbing over a large volume of clothing and debris obstructing the path to the basement exit further supports a finding of flight, as does the fact that Akwei first claimed to be on his way to work, then on the way to pick up his mother-in-law, neither of which was substantiated by the facts.

Second, evidence supported a link between Akwei's flight and consciousness of guilt of the instant offense; Akwei does not dispute that he knew he was under investigation for the February incident and that his prior charges had been dismissed without prejudice, nor does he contend that an alternate or intervening incident explains his behavior. Although several months had passed between Akwei's February arrest and his flight, the facts here support the conclusion that his attempt to flee from police on July 14 related to that prior arrest--the only pending criminal investigation of which he was aware. We

16

can therefore distinguish Beahm, in which we found that the district court erred by giving a flight instruction when the government presented "no evidence that [the defendant] was aware that he was the subject of a criminal investigation" at the time he fled. 664 F.2d at 420. Therefore, the district court did not abuse its discretion in admitting evidence of Akwei's flight and instructing the jury accordingly.

D.

Finally, Akwei contests the forfeiture order entered against him. He argues that he never received proceeds from the February 21 transaction and that coconspirators may not be held jointly and severally liable for conspiracy proceeds, such that the district court erred in accepting the $3,200 seized during the search as substitute property to satisfy the judgment.

In the criminal forfeiture context, we review a district court's findings of fact for clear error and its legal interpretations de novo. United States v. Oregon, 671 F.3d 484, 490 (4th Cir. 2012). In order to obtain a forfeiture order after conviction, "the government must establish a nexus between the property for which it is seeking forfeiture and the crime by a preponderance of the evidence." United States v. Martin, 662 F.3d 301, 307 (4th Cir. 2011) (citing Fed. R. Crim. P. 32.2(b)(1)(A)). Conspirators "are responsible at sentencing for co-conspirators' reasonably foreseeable acts and omissions . . .

17

in furtherance of the jointly undertaken criminal activity." United States v. McHan, 101 F.3d 1027, 1043 (4th Cir. 1996) (internal quotation and citation omitted). As forfeiture is an element of the defendant's sentence, "[w]e have therefore held conspirators jointly and severally liable for the forfeiture of proceeds from a conspiracy." United States v. Jalaram, 599 F.3d 347, 351 (4th Cir. 2010) (citing McHan, 101 F.3d at 1043). Further, the criminal forfeiture statute allows for forfeiture of "any other property of the defendant" as substitute property when conspiracy proceeds cannot be located. United States v. McHan, 345 F.3d 262, 271 (4th Cir. 2003) (citing 21 U.S.C. § 853(p)).

Applying these principles, Akwei's arguments fail. Evidence introduced at trial revealed that Macauley coconspirators were offered thousands of dollars to work as couriers, and that the street value of just one kilogram of heroin ranged from $70,000 to $120,000. Insofar as Akwei challenges the establishment of the nexus between the $5,000 order entered against him and the February 21 transaction, his argument fails because coconspirators are jointly and severally liable for the forfeiture of conspiracy property. Thus, the $5,000 order was proper even if Akwei did not receive payment for his participation in the February 21 transaction, as evidence at trial supported the conclusion that the Macauley

18

coconspirators obtained at least that amount. As Akwei had no other assets, the government properly applied the seized $3,200 to the judgment, because "[i]f any of the forfeitable property cannot be located by the government . . . the court must, pursuant to [21 U.S.C.] § 853(p), order the forfeiture of 'substitute property' of the defendant up to the value of the forfeitable property." McHan, 345 F.3d at 268. We thus affirm the district court's forfeiture order.[4]

## III.

For the foregoing reasons, Akwei's conviction and sentence are

AFFIRMED.

---

[4] Finally, we reject Akwei's argument that the district court erred in denying his motion for a minor role adjustment at sentencing. As Akwei himself concedes, his sentence "would not have been affected by the court's ruling on this issue," Appellant's Br. at 29, rendering any error harmless. Akwei received the mandatory minimum 120-month sentence for his conspiracy conviction; the district court explicitly recognized, as does Akwei, that a two-level minor role adjustment would not impact the mandatory minimum.

19