PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

CHARCEIL DAVIS KELLAM, a/k/a
Charceil Kellam,

*Defendant-Appellant.*

No. 07-4863

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ADELSON MICHEL, a/k/a Mike, a/k/a
Cowboy,

*Defendant-Appellant.*

No. 07-4902

Appeals from the United States District Court
for the Western District of Virginia, at Harrisonburg.
Glen E. Conrad, District Judge.
(5:06-cr-00041-GEC)

Argued: January 26, 2009

Decided: June 3, 2009

Before NIEMEYER, KING, and DUNCAN, Circuit Judges.

Affirmed in part, vacated in part, and remanded by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

---

**COUNSEL**

**ARGUED:** Michael Thayer Hemenway, Charlottesville, Virginia, for Appellants. Jean Barrett Hudson, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John S. Hart, Jr., HART LAW OFFICES, Harrisonburg, Virginia, for Appellant Adelson Michel. Julia C. Dudley, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Defendants Charceil Kellam and Adelson Michel appeal from criminal judgments entered against them in the Western District of Virginia, arising from their involvement in a drug distribution conspiracy. Kellam contends that the district court erred in five ways — in dismissing Michel from Count Eight, in denying her motion to suppress, by refusing to dismiss the indictment for lack of a speedy trial, in declining to award judgments of acquittal, and in imposing a statutory enhancement resulting in two concurrent terms of life imprisonment. For his part, Michel presents three contentions — that the evidence failed to prove his involvement in the alleged conspiracy, that the sentencing court erred in its findings on drug quantity, and that the court erroneously adjusted his sentence for being a manager or supervisor of the conspiracy. As explained below, we affirm each of the convictions under

challenge, as well as Michel's sentence. We vacate Kellam's sentence and remand.

## I.

## A.

Beginning in January 2002, agents of the Northwest Virginia Regional Drug Task Force, in cooperation with the DEA and the ATF, began an investigation into a cocaine base distribution ring in northwestern Virginia. The investigation revealed that large quantities of cocaine base (commonly known as "crack" or "crack cocaine") were being smuggled into the Winchester area from Florida. Conservative estimates were that the conspiracy distributed more than 1.5 kilograms of crack cocaine, much of it in a part of Winchester called the "Block." During the investigation, the authorities made approximately fifty controlled buys of crack and executed multiple search warrants.

On September 6, 2006, Kellam and Michel were among twelve defendants charged in a twenty-nine count indictment returned in the Western District of Virginia (the "Indictment").[1] All the defendants were charged in Count One — with conspiracy to distribute fifty grams or more of cocaine base, between January 2002 and September 2006, in violation of 21 U.S.C. § 846. Kellam was charged in four of the twenty-nine counts, and Michel was charged in eight of them. Of significance in these appeals, Kellam and Michel were the only defendants in Count Eight, which alleged a substantive distribution offense occurring on August 2, 2005, involving approximately 57.8 grams of cocaine base, in violation of 21

---

[1]The other ten defendants in the Indictment, which is found at J.A. 24-42, were Sheena Curry, Howard Felix, Mark Fleurival, Roland Jackson, Lionel Joseph, Jackson Milien, Robert Scott, O'Benson Sesere, Sherry Sloane, and Tiffany Sloane. (Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

U.S.C. § 841(a).[2] Kellam and Michel each pleaded not guilty to the Indictment, and a series of relevant pretrial proceedings followed.

- On January 30, 2007, Kellam filed a motion to suppress the evidence obtained following a stop of her vehicle on April 4, 2006. The district court conducted a suppression hearing on March 2, 2007, at the conclusion of which it delivered findings and conclusions from the bench. There-after, on March 6, 2007, the court entered an order denying Kellam's suppression motion.

- On March 21, 2007, Kellam and Michel sought dismissal of the Indictment for violations of the Speedy Trial Act. The following day, the district court addressed the speedy trial issue and denied relief.

- On March 22, 2007, the prosecution filed a motion to dismiss Count Eight as to Michel only, representing that further investigation had revealed that Michel was not involved in distrib-uting the cocaine base specified therein. On March 23, 2007, the court dismissed Count Eight

---

[2]In addition to Counts One and Eight, Kellam and Michel were charged in the Indictment as follows:

*Counts Two, Three, Four, Five, Six, and Seven*: that Michel had distributed approximately 1.81 grams, 2.8 grams, 0.75 grams, 1.3 grams, 1.4 grams, and 7.7 grams of cocaine base, on or about December 10, 2004; February 25, 2005; March 22, 2005; April 15, 2005; May 13, 2005; and July 14, 2005, respectively, with each offense being a violation of 21 U.S.C. § 841(a); and

*Counts Seventeen and Eighteen*: that Kellam had possessed with intent to distribute approximately 1.85 grams, and 12.1 grams of cocaine base, on or about April 4, 2006, and May 31, 2006, respectively, in violation of § 841(a).

as to Michel, leaving that offense pending against Kellam alone.[3]

By the time of Kellam and Michel's trial, nine of their ten codefendants had entered pleas of guilty to the Count One conspiracy.[4] The codefendants' guilty pleas were made pursuant to plea agreements with the prosecution, under which the balance of the Indictment would be dismissed as to them.

## B.

The trial of Kellam and Michel was conducted in Harrisonburg over the four-day period from March 26 to March 29, 2007. In its case-in-chief and on rebuttal, the prosecution presented approximately twenty-six witnesses, including thirteen law enforcement officers, three experts, and three cooperating codefendants who had pleaded guilty (Mark Fleurival, Roland Jackson, and Robert Scott). Seven other prosecution witnesses — most of whom had pleaded guilty to related drug crimes — testified to being involved in various crack transactions with Kellam and Michel. In contrast, the defendants called seven witnesses, six of whom were prosecution witnesses recalled for impeachment purposes.[5] Neither Kellam nor

---

[3]Count Eight of the Indictment, from which Michel was dismissed immediately prior to trial, alleged as follows:

> That on or about August 2, 2005, in the Western Judicial District of Virginia, ADELSON MICHEL and CHARCEIL KELLAM, as principals and as aiders and abettors, knowingly and intentionally distributed approximately 57.8 grams of a mixture or substance containing a detectable amount of cocaine base, or "crack," a Schedule II controlled substance . . . in violation of [21 U.S.C. § 841(a)].

Indictment 11.

[4]The twelfth codefendant, O'Benson Sesere, was apparently a fugitive for an extensive period and was only recently apprehended. He is presently awaiting trial.

[5]Michel's defense also called codefendant Tiffany Sloane, who had pleaded guilty to the Count One conspiracy. Sloane was apparently called

Michel testified at trial. The contentions being made on appeal mirror certain of the defense theories at trial — that the prosecution's witnesses were unreliable and the evidence was insufficient to support convictions.

At the conclusion of the prosecution's case-in-chief, Kellam and Michel moved for judgments of acquittal under Federal Rule of Criminal Procedure 29.[6] The district court denied those motions, but observed that, "[a]s to Ms. Kellam, the Court agrees that the evidence is much more marginal and extremely close, in the Court's view, on the conspiracy count [than against Michel]." J.A. 996. On March 29, 2007, the jury returned its verdict, finding Kellam guilty of the four offenses in Counts One, Eight, Seventeen, and Eighteen, and Michel guilty on the seven offenses in Counts One through Seven. On April 13, 2007, Kellam filed two additional motions for judgments of acquittal — one challenging the sufficiency of the evidence supporting her convictions and the dismissal of Michel from Count Eight, and the other asserting that the jury venire failed to represent a fair cross-section of the community. The court denied those motions by its Memorandum Opinion of August 6, 2007. *See United States v. Kellam*, No. 5:06-cr-00041 (W.D. Va. Aug. 6, 2007) (the "Rule 29 Opinion").[7]

---

in an effort to attack the credibility of prosecution witnesses and show that Michel was not involved in the alleged conspiracy. Sloane acknowledged on cross-examination, however, that several of her codefendants, including Michel, had been involved in drug trafficking in the Winchester area.

[6]Rule 29(a) of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

[7]The Rule 29 Opinion is found at J.A. 1198-1209.

## C.

Prior to trial, on March 8, 2007, the government filed a sentencing enhancement information against Kellam, notifying her that, upon conviction, she would be subject to statutorily enhanced life terms on Counts One and Eight, pursuant to 21 U.S.C. § 841(b)(1)(A), because of her prior drug-related felony convictions (the "Information").[8] On August 23, 2007, Kellam responded to the Information, asserting that all of the alleged prior convictions were "invalid" because the prosecution "has not proved beyond a reasonable doubt that [she] was convicted" (the "Response"). J.A. 1210-11. During her August 24, 2007 sentencing hearing, the district court addressed the three prior convictions alleged in the Information and analyzed the applicability of the statutory enhancement. The court concluded that two of the prior convictions constituted qualifying convictions under § 841(b)(1)(A), and thus that Kellam was subject to mandatory life terms on Counts One and Eight.

Also at her sentencing hearing, Kellam was found accountable for at least 500 grams but less than 1.5 kilograms of cocaine base, resulting in a Sentencing Guidelines base offense level of 36. *See* USSG § 2D1.1(c)(2) (2006). The sentencing court assigned her eleven criminal history points, establishing a criminal history category of V. As a result, Kellam's advisory Guidelines sentencing range was 292 to 365 months. Because of the two prior felony drug convictions recognized by the court, however, § 841(b)(1)(A) mandated that life terms be imposed on Counts One and Eight. Thus, Kellam was sentenced to life on each of those counts, plus 360 months on Counts Seventeen and Eighteen, with the four terms to run concurrently.

---

[8]Pursuant to the provisions of 21 U.S.C. § 841(b)(1)(A), "[i]f any person commits a [federal drug offense involving 50 grams or more of cocaine base] after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release."

At Michel's September 6, 2007 sentencing hearing, the district court adopted his presentence report ("PSR"), with some minor exceptions. The court found Michel accountable for at least 1.5 kilograms of cocaine base, and imposed a three-level adjustment for management and supervision of the conspiracy, resulting in a total offense level of 41. *See* USSG §§ 2D1.1(c)(1), 3B1.1(b) (2006). With a criminal history category of I, Michel's advisory Guidelines range was 324 to 405 months. Michel was sentenced to terms of 324 months on Counts One and Seven, plus 120 months on each of Counts Two through Six, with all seven terms to run concurrently. On June 3, 2008, the court reduced Michel's aggregate sentence to 262 months, due to intervening changes in the Guidelines with respect to crack cocaine.

Kellam and Michel have filed timely notices of appeal and their appeals have been consolidated. We possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

A district court's ruling on a prosecution motion to dismiss an indictment, or a portion thereof, is generally reviewed for abuse of discretion. *See United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000). In assessing a trial court's ruling on a motion to suppress, we review factual findings for clear error and legal determinations de novo. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Wardrick*, 350 F.3d 446, 451 (4th Cir. 2003). We review de novo a district court's rulings on a speedy trial issue. *See United States v. Jarrell*, 147 F.3d 315, 317 (4th Cir. 1998). A clearly erroneous standard is applicable, however, to any findings of fact made in that regard. *See United States v. Keith*, 42 F.3d 234, 236 (4th Cir. 1994). We review de novo a district court's ruling on a motion for a judgment of acquittal. *See United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006). In assessing either a statutory or Guidelines sentencing enhancement, we review findings of fact for clear error and legal decisions de

novo. *See United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008); *United States v. Letterlough*, 63 F.3d 332, 334 (4th Cir. 1995).

### III.

In these appeals, Kellam and Michel present multiple contentions of error. We first assess Kellam's contentions — that the district court erred in dismissing Michel from Count Eight, in denying her motion to suppress, in declining to dismiss for lack of a speedy trial, in denying her motions for judgments of acquittal, and in imposing a statutory enhancement resulting in two concurrent terms of life imprisonment. We then evaluate Michel's contentions — that the evidence failed to prove his involvement in the alleged conspiracy, that the sentencing court erred with respect to drug quantity, and that it erroneously adjusted his sentence for being a manager or supervisor of the conspiracy.

### A.

### 1.

Kellam first contends that the district court erred — and prejudiced her defense — by dismissing Michel from Count Eight. Four days before trial, the prosecution moved to dismiss Michel from that charge, explaining that "[a] subsequent investigation has determined that [Michel] was not the 'Mike' that distributed the cocaine base charged in Count Eight of the Indictment." J.A. 96. The court granted the dismissal — over Kellam's objection — and Count Eight was tried against Kellam alone.[9] In its Rule 29 Opinion, the court explained its rea-

---

[9]The trial evidence revealed that at least four men using the nickname "Mike," including Michel, were associated with the various defendants in this case. There was also evidence that the person referred to as "Cowboy," or "Cowboy Mike," alleged in the Indictment to be Michel, was actually Kellam's boyfriend. Cowboy was shown to be involved in the Count Eight offense.

soning for rejecting Kellam's challenge to Michel's dismissal from Count Eight:

> Because Kellam was charged as both a principal and as an aider and abettor, . . . a change in identification of her codefendant in the indictment did not constitute a constructive amendment. . . . First, Kellam was not surprised at trial in a way that prevented preparation of her defense. . . . In fact, Kellam knew that Michel had been dismissed from the indictment before her trial even began. Furthermore, the court notes that Kellam's defense presented at trial as to Count Eight, denying that the transaction taped on August 2, 2005 was a drug transaction, would not have been affected by the identification of a different codefendant.

Rule 29 Opinion 8 (internal citations omitted). Kellam maintains on appeal that Michel's dismissal from Count Eight constitutes prejudicial error and violates the Fifth Amendment, in that only a grand jury is empowered to broaden or alter the charges of an indictment.[10] As explained above, we assess this contention for abuse of discretion, keeping in mind that a court must grant a prosecution's motion unless "clearly contrary to manifest public interest." *See United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000).

A variance between the allegations of an indictment and the proof at trial is fatal if it "either surprises the defendant at trial

---

[10]In pursuing her Count Eight contention, Kellam also maintains that Federal Rule of Criminal Procedure 48(a), which provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint," does not authorize the dismissal of a single count — or a portion of a count — within a multi-count indictment. This contention is without merit. *See United States v. Manbeck*, 744 F.2d 360, 373 n.13 (4th Cir. 1984) ("[U]nder 48(a) a count may be dismissed from an indictment without destroying the entire indictment or affecting the other charges contained therein.").

and hinders the preparation of his defense, or . . . exposes him to the danger of a second prosecution for the same offense." *United States v. Redd*, 161 F.3d 793, 795-96 (4th Cir. 1998) (internal quotation marks and alterations omitted). Such a variance warrants a reversal on appeal, however, "only if the appellant shows that the variance infringed his 'substantial rights' and thereby resulted in actual prejudice." *United States v. Kennedy*, 32 F.3d 876, 883 (4th Cir. 1994). When, however, the evidence "does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible." *Redd*, 161 F.3d at 795. Importantly, if a reviewing court decides that an indictment's incorrect allegations "do not concern an issue that is essential or material to a finding of guilt," the court should simply focus on whether the indictment "provided the defendant with adequate notice to defend the charges against him." *United States v. Floresca*, 38 F.3d 706, 709-10 (4th Cir. 1994).

In this situation, the district court did not abuse its discretion in dismissing Michel from Count Eight, because its ruling did not alter the charge against Kellam or concern any issue essential to a finding of her guilt. On Count Eight against Kellam, the court instructed the jury — without objection — that the prosecution was obliged to prove three elements:

> One, that a defendant knowingly and intentionally distributed a mixture or substance containing cocaine base . . . ; two, that at the time of such distribution, the defendant knew that the mixture or substance contained cocaine base; and three, that the quantity of the mixture or substance containing cocaine base which the defendant distributed was of at least a particular quantity alleged in the indictment.

J.A. 1114-15. Kellam contends that Michel's dismissal from Count Eight "add[ed] a new factual element to the offense,"

because someone other than Michel was necessarily involved therein. Br. of Appellants 15. None of the elements of Count Eight required that Kellam's codefendant be properly identified, however, and the dismissal of Michel thus did not impact any essential aspect of the charge, or place Kellam in danger of being tried again for the same offense. *Cf. United States v. Caldwell*, 176 F.3d 898, 901-02 (6th Cir. 1999) (finding no error where jury not required to determine specific drug quantity alleged, because quantity not element of offense). Nor did the dismissal of Michel from Count Eight prejudice Kellam by failing to provide her with proper notice or adequate time to prepare. Notably, Count Eight charged Kellam as both a principal and an aider and abettor. The district court recognized this important aspect of the charge, and carefully instructed the jury on it — again without objection — stating,

> I charge you that a defendant may also be found guilty of the crime of distributing cocaine base as charged in [Count Eight], even if he or she personally did not do every act constituting the offense charged if he or she aided and abetted in the commission of the offense. . . . For you to find a defendant guilty of distributing cocaine base by reason of aiding and abetting, the government must prove beyond a reasonable doubt that all of the essential elements of the distribution charge were committed by some person or persons and that the defendant aided and abetted the commission of that crime.

J.A. 1115-16.[11] Kellam was thus on notice that Count Eight charged her in alternative capacities, and she could not have been surprised.

In pursuing this contention, Kellam also seeks support from

---

[11]Notably, anyone aiding and abetting a federal offense is punishable as a principal. *See* 18 U.S.C. § 2; *see also United States v. Hairston*, 46 F.3d 361, 366 (4th Cir. 1995).

the Fifth Circuit's decision in *United States v. Salinas*, which struck down a trial court's amendment of an indictment. *See* 654 F.2d 319 (5th Cir. 1981), overruled *on other grounds by United States v. Adamson*, 700 F.2d 953, 965 n.18 (5th Cir. 1983). The *Salinas* indictment had alleged that the defendant aided and abetted a specific bank officer in committing theft, but the evidence showed that an entirely different bank officer was the one involved in the offense, and the court amended the indictment accordingly. *Id.* at 322-23. In altering the principal offender, the appeals court ruled, Salinas had been convicted of a different crime than that charged by the grand jury. *Id.* at 324. Here, however, Kellam was charged as both a principal and an aider and abettor, and her effort to analogize *Salinas* is thus without merit. Accordingly, the dismissal of Michel from Count Eight was not an abuse of discretion, and we affirm the court's rejection of this contention.[12]

2.

Kellam's second contention on appeal is that the district court erred in denying her motion to suppress the evidence resulting from the April 4, 2006 traffic stop of her vehicle — in which she was travelling alone. She contends that the stop was pretextual and thus unconstitutional. At the suppression hearing of March 2, 2007, Trooper Thomas Seagle explained that he stopped Kellam's vehicle on a road near Winchester after he observed it "cross[ing] over" and "straddling" the double center divider line and "display[ing] a left turn signal," even though there was "nowhere to the left side of the roadway to make a left-hand turn." J.A. 56-57. After Seagle obtained Kellam's driver's license, he returned to his patrol

---

[12]Kellam also contends that the dismissal of Michel from Count Eight adversely impacted the conspiracy charge against her in Count One, in that the transaction underlying Count Eight was also an alleged overt act in Count One. *See* Indictment 5-6. This assertion is also meritless, however, because an overt act is not necessary in a § 846 prosecution. *See United States v. Shabani*, 513 U.S. 10, 15 (1994); *United States v. Burns*, 990 F.2d 1426, 1435 (4th Cir. 1993).

car to check her records. On approaching Kellam's vehicle for the second time, he smelled marijuana. As a result, Seagle asked Kellam to step out of her vehicle so that he could search it. As Seagle explained, Kellam then "got out of the car with no problem. However, when I attempted to look inside the vehicle, that's when she became combative with me and got back in her vehicle." *Id.* at 59. Kellam then drove away.

Seagle pursued the fleeing Kellam for over a mile, and she finally pulled into a service station. When Seagle again approached Kellam, the two "struggle[d]" for "an extended period of time." J.A. 60.[13] Sheriff's deputies eventually arrived, subdued and arrested Kellam, and took her into custody. Seagle then searched Kellam's purse, which was on the front passenger seat of her vehicle, and found a plastic bag containing marijuana. A search of Kellam and her belongings resulted in the seizure of 1.85 grams of crack cocaine, over $400 in loose currency, plus $950 in cash rolled up and secured with a rubber band.[14] Deputies also took statements from Kellam after her arrival at the jail. As a result of these events, Kellam was promptly charged with a variety of state offenses, including reckless driving and possession of marijuana and cocaine.

At the conclusion of the suppression hearing, the district court denied Kellam's motion to suppress from the bench, explaining,

> I find that there was an articulable, reasonable suspi-
> cion for the officer to believe there was an infraction

---

[13]The scene relating to these events was filmed on Seagle's police car video recorder, and the videotape and a transcript of it were presented at the suppression hearing.

[14]In the suppression hearing, another sheriff's deputy testified, "I believe there were smoking pipes or drug paraphernalia found" on Kellam after she was subjected to a strip search upon her arrival at the jail. J.A. 74.

of Virginia traffic laws when he made the first stop. Therefore, I think the whole scenario then became authorized in a legitimate intrusion and a legitimate effort to detain Ms. Kellam until her investigation could be made. Based on that finding, it seems to me the motion has to be denied.

J.A. 86. In challenging the suppression ruling on appeal, Kellam focuses solely on her contention that the stop was pretextual. She maintains that the searches of her person and belongings, including the purse found in the front seat of her car, were unconstitutional as "fruit of the poisonous tree." Br. of Appellants 45. In reviewing this contention, we assess the court's factual findings for clear error, and its legal rulings de novo. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Wardrick*, 350 F.3d 446, 451 (4th Cir. 2003). As explained below, we reject this contention and all its facets.

We utilize an objective test for assessing whether a vehicle stop for a minor traffic violation was pretextual. *See United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993). Under this test, "if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment. That is so regardless of the fact that the officer would not have made the stop but for some hunch or inarticulable suspicion of other criminal activity." *Id.*

Put simply, the district court did not err in ruling that Seagle's stop of Kellam's vehicle was constitutional, predicated on a reasonable suspicion of unlawful conduct. It was uncontroverted — and the court so found — that Kellam had crossed the double center line, a violation of Virginia law. *See* Va. Code Ann. § 46.2-804; *see also Whren v. United States*, 517 U.S. 806, 810 (1996) (concluding that officer who observes traffic violation may stop vehicle without violating Fourth Amendment).

The searches of Kellam and her purse were also appropriate and constitutional. First and foremost, Kellam's arrest did not contravene the Fourth Amendment. *See United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004) (concluding that "if an officer smells the odor of marijuana in circumstances where [he] can localize its source to a person, the officer has probable cause" to arrest for marijuana possession); *see also* Va. Code Ann. § 18.2-57 (designating assault or battery on officer as felony); *id.* § 18.2-479.1 (providing that attempt to prevent officer from making lawful arrest is misdemeanor). As a result, the search of Kellam's person was incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969) (concluding that search incident to lawful arrest does not violate Fourth Amendment). Finally, the search of Kellam's purse, which was on the front passenger seat of her vehicle, was likewise constitutional. *See United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) (concluding that odor of marijuana coming from properly stopped vehicle satisfies probable cause for search of vehicle and baggage therein).[15]

In sum, the facts found by the district court provide ample support for its ruling on the suppression issue. They are not

---

[15]The Supreme Court's recent decision in *Arizona v. Gant* does not undermine our disposition of the suppression issue. *See* No. 07-542, 2009 WL 1045962 (U.S. Apr. 21, 2009). In *Gant*, the Court concluded that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.* at *2. Gant had been arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car — all before the officers searched his vehicle and found cocaine in a jacket in the back seat. *Id.* In those circumstances, the Court deemed the warrantless search of Gant's vehicle as inappropriate, because the authorities "could not reasonably have believed" that evidence of the offense for which Gant was arrested might be found in his car. *Id.* at *8. Kellam's case is readily distinguishable, however, in that the localized smell of marijuana in her vehicle provided ample probable cause for the actions of the officers.

clearly erroneous, the court did not commit legal error, and we thus affirm its denial of the suppression motion.

3.

Kellam's third contention on appeal is that the district court erred in declining to dismiss the Indictment for lack of a speedy trial.[16] The Speedy Trial Act generally requires that a criminal trial commence within seventy days of the filing of an information or indictment, or of the defendant's initial appearance, whichever last occurs. *See* 18 U.S.C. § 3161(c)(1). The purpose of the Act is to protect the interests of both the defendant and the public; however, certain delays may be excluded from the seventy-day count, including those where the court has found "that the ends of justice served by granting [a] continuance outweigh the public's and defendant's interests in a speedy trial." *Zedner v. United States*, 547 U.S. 489, 498-99 (2006); *see also* 18 U.S.C. § 3161(h)(7)(A) (formerly found in § 3161(h)(8)). In addition to such continuances, excludable delays include those attributable to the pendency of pretrial motions. *See* § 3161(h) (listing periods of delay excluded from computation). Of note, when a prosecution involves multiple defendants, the "time excludable for one defendant is excludable for all defendants." *United States v. Jarrell*, 147 F.3d 315, 316 (4th Cir. 1998); *see also United States v. Gutierrez*, 48 F.3d 1134, 1136 (10th Cir. 1995) (recognizing delay resulting from codefendant's motion as excludable). In order for a delay resulting from a continuance to be excludable, the court is to explain, "either orally or in writing, its reasons for finding" that the ends of justice served by granting the continuance outweigh the interests of the public and the defendant. § 3161(h)(7)(A).

Kellam first appeared before the magistrate judge on September 12, 2006, and her trial was initially scheduled for

---

[16]Although both Kellam and Michel moved to dismiss for lack of a speedy trial, only Kellam presents a speedy trial issue on appeal.

November 21, 2006. Several continuances, pretrial motions, and hearings thereafter occurred.[17] At the conclusion of the March 22, 2007 hearing, the district court denied relief on the speedy trial motion, explaining its ruling in the following terms:

> The simple fact is, . . . Ms. Kellam did file a variety of motions. I think all three are identified, motions that resulted in time being excluded, but by my calculations, still, just these standing alone would have been insufficient to bring her case within the Speedy Trial Act, had it not been for the continuances and delays that were associated with the other defendants. . . . [T]here was no effort by either defendant to have his or her case severed and I think the case law would demand that in this situation as a predicate to successful prosecution of a speedy trial motion. Accordingly, [Kellam's] motion[ ] will be denied. We'll consider the case to be timely tried.

J.A. 105-06. In its written opinion, filed the following day, the court emphasized that, in granting each trial continuance, it had found that "the ends of justice served by granting [each of the] continuance[s] outweighed the best interest of the public and the co-defendant in a speedy trial." *United States v.*

---

[17]The various trial continuances, pretrial motions, and hearings included the following. First, a codefendant sought a continuance on November 9, 2006, and the district court granted the request seven days later, rescheduling the trial for January 4, 2007. Next, on November 28, 2006, Kellam sought reconsideration of the magistrate judge's detention order, which was denied on November 30, 2006. On December 27, 2006, another codefendant sought a continuance, which the court granted, postponing the trial until March 22, 2007. Kellam then filed other motions following this postponement, including a pro se motion seeking to substitute counsel on January 17, 2007, which was resolved on February 8, 2007. She filed her motion to suppress on January 30, 2007, which was heard on March 2, 2007, and denied on March 6, 2007. Another continuance was granted during the March 22, 2007 pretrial hearing, and the trial commenced on March 26, 2007.

*Kellam*, No. 5:06-cr-00041, slip op. at 2 (W.D. Va. Mar. 23, 2007).[18]

The entire period between Kellam's initial appearance and the commencement of her trial was nearly 200 days. Excluding the delays resulting from trial continuances and pretrial motions, however, Kellam was tried less than seventy days after her initial appearance, and the Speedy Trial Act was thus not contravened.[19] Because there were no clearly erroneous factual assessments, and because the district court made no legal error, we also reject Kellam's speedy trial contention.

4.

Kellam's fourth contention on appeal is that the district court erred in denying her various Federal Rule of Criminal Procedure 29 requests for judgments of acquittal on Counts One, Eight, Seventeen, and Eighteen. Kellam moved unsuccessfully for acquittal at the close of the prosecution's case-in-chief, and then unsuccessfully renewed her request following the trial. On appeal, she contends that the evidence was insufficient to support any of her convictions, and that the court erred in denying her motions.[20] We assess this contention de novo. *See United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006).

In pursuing this assertion of error, Kellam focuses on the conspiracy offense and argues that "the only witnesses who were able to state that they had purchased cocaine from [her]

---

[18]The district court's written opinion with respect to the speedy trial ruling is found at J.A. 134-36.

[19]The various trial continuances alone are sufficient to undermine Kellam's position on the delay issue. Indeed, excluding the time periods attributable to such continuances, the applicable period of delay was less than sixty days.

[20]In her Rule 29 motions, Kellam also challenged the composition of the jury venire. She does not pursue this contention on appeal.

were not named in the conspiracy indictment and were not credible." Br. of Appellants 49. She also highlights the district court's statement at trial, in denying her Rule 29 motion on Count One, that "[a]s to Ms. Kellam, the Court agrees that the evidence is much more marginal and extremely close, in the Court's view, on the conspiracy count [than against Michel]." J.A. 996. In addition to challenging the proof on Count One, Kellam seeks Rule 29 relief on the substantive offenses in Counts Eight, Seventeen, and Eighteen. On the latter two charges, Kellam asserts that the quantities of crack cocaine underlying her convictions were *de minimus* and were sufficient to support misdemeanor possession convictions only, as opposed to felony convictions for possession with intent to distribute.

a.

On the Count One conspiracy charge, the prosecution was obliged to prove "(1) an agreement between two or more persons to engage in conduct that violates a federal drug law, (2) the defendant's knowledge of the conspiracy, and (3) the defendant's knowing and voluntary participation in the conspiracy." *United States v. Strickland*, 245 F.3d 368, 384-85 (4th Cir. 2001). After a conspiracy is shown to exist, however, the evidence "need only establish a slight connection between the defendant and the conspiracy to support conviction." *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992). The existence of a "tacit or mutual understanding" is sufficient to establish a conspiratorial agreement, and the proof of an agreement "need not be direct" — it may be inferred from circumstantial evidence. *United States v. Ellis*, 121 F.3d 908, 922 (4th Cir. 1997) (internal quotation marks omitted).[21]

---

[21]The district court instructed the jury that it should acquit Kellam if she was not involved in the single conspiracy charged. Notably, a single conspiracy can involve multiple transactions with an overlap of key actors, motives, and the same geographic area. *See Smith*, 451 F.3d at 218.

The evidence supporting Kellam's involvement in the Count One conspiracy was substantial. By way of example, Mannot Lusca, who had purchased drugs on the Block from Michel and his codefendants, also bought marijuana and cocaine from Kellam "when [Michel] and them [were] not in town." J.A. 458. When Lusca could not purchase drugs from Michel, he explained, "I know [Kellam] got it. So I go see her like every month, every two months." *Id.* Significantly, Kellam told Lusca that, if he ever had problems getting crack on the Block, he could come get it from her. Lusca also testified that Kellam's boyfriend, "Cowboy," would leave drugs for Kellam to sell to Lusca, and that Cowboy was known to live and hang out on the Block. According to Martha Turner, Cowboy referred customers to Michel when Cowboy did not have a sufficient drug supply, even though Michel and Cowboy were competitors. Christopher Clark, another prosecution witness who bought drugs from codefendants on the Block, testified, "I'm sure I seen [Kellam] around 'the Block' area," and Lusca told Clark "he would get stuff from [Kellam]." *Id.* at 793, 796. Sarah Johnson, a confidential informant, purchased two ounces of crack cocaine from Cowboy and Kellam in the controlled buy of August 2, 2005.[22]

The district court's Rule 29 Opinion carefully explained its ruling on the judgment of acquittal issues with respect to Count One. In that regard, the court concluded that substantial evidence supported the verdict against Kellam, primarily relying on the evidence of three witnesses: Lusca, Johnson, and Turner. The court explained that,

> [a]t trial, Lusca testified that he knew Kellam from her presence on the "block" from where the conspir-

---

[22]The August 2, 2005 transaction involving Johnson was the basis for the § 841(a) offense alleged in Count Eight. Indeed, the events underlying Counts Eight, Seventeen, and Eighteen were all alleged as overt acts in the Count One conspiracy. The evidence supporting those counts thus also supports the conspiracy charge in Count One. *See* Indictment 28, 31.

acy operated. Johnson was the confidential informant who made the controlled buy described in Count Eight. During the buy, Johnson wore a wire, and a tape recording of the buy was played for the jury. Johnson identified Kellam in open court as the female participant in the controlled buy. Johnson also testified that Kellam negotiated the purchase from the individual identified as "Cowboy" with Johnson. . . . Turner testified as to the involvement in the conspiracy of both Michel and Cowboy, who participated in the conspiracy together even though they were competitors at times. Based on this evidence, . . . a reasonable jury could find there was an agreement to distribute cocaine base, that the defendant knew of the conspiracy, and that the defendant knowingly or voluntarily became a part of the conspiracy.

Rule 29 Opinion 3-4 (footnote omitted).

Put succinctly, we agree with the district court's analysis. Viewing the evidence in the light most favorable to the prosecution — as we must — substantial evidence supports the verdict against Kellam on Count One. *See United States v. Burgos*, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc) ("[A]n appellate court . . . must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold it." (internal quotation marks omitted)).[23]

b.

In Counts Eight, Seventeen, and Eighteen, Kellam was charged under § 841(a)(1) of Title 21, which makes it unlaw-

---

[23]Although Kellam challenges the credibility of the witnesses who linked her to the Count One conspiracy, credibility determinations are for the jury and are not reviewed on appeal. *See Smith*, 451 F.3d at 217; *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997).

ful to either "distribute" or "possess with intent to . . . distribute" a controlled substance. In Count Eight, Kellam was charged as both a principal and an aider and abettor in the § 841(a)(1) distribution offense. As a result, the prosecution was required to prove only that she was somehow involved on that occasion (as either a principal or an aider and abettor) in the distribution of crack cocaine. In denying Kellam's Rule 29 motion on Count Eight, the district court explained that the verdict was supported by substantial evidence:

> Sarah Johnson testified at trial as to Kellam's involvement in the controlled buy described in Count Eight. Johnson testified that she negotiated the purchase with Kellam, and that Kellam counted the money and helped to weigh the cocaine base. The court must assume that the jury found Johnson to be a credible witness. Therefore, in light of Johnson's testimony and the evidence surrounding the transaction, the court concludes that the jury's finding that Kellam was guilty under Count Eight was supported by substantial evidence.

Rule 29 Opinion 8-9 (internal citations omitted).

We agree that the proof on Count Eight was compelling: Johnson, the informant, testified in detail concerning her encounter with Kellam during the police-controlled purchase of crack cocaine on August 2, 2005. Kellam herself counted the cash that Johnson delivered, while Cowboy measured the crack on a scale and gave Johnson "a lecture on making crack." J.A. 389. During this illicit activity, Johnson wore a police wire, and the prosecution played the recording for the jury. Importantly, Johnson identified Kellam in court as the female participant in those events. An ATF agent also testified on the Count Eight transaction, confirming that a videotape "caught Ms. Kellam coming out [of the house] and then going back in" during the transaction. *Id.* at 885. There was

thus ample evidence supporting Kellam's conviction on Count Eight.

Kellam's Rule 29 challenges on Counts Seventeen and Eighteen — charging § 841(a)(1) offenses committed on April 4, 2006, and May 31, 2006 — also lack merit. In this respect, Kellam argues her de minimus point, contending that the evidence "failed to prove beyond a reasonable doubt that [she] had the intent to sell or distribute the cocaine base" and, instead, established that the quantities of crack involved were consistent with personal use only. Br. of Appellants 52. The district court denied Rule 29 relief because the evidence supporting Kellam's convictions on those counts was "overwhelming" and "hard to ignore." Rule 29 Opinion 9. The court explained that

> [a]t trial, the government adduced testimony that the quantities of cocaine base involved in each of Counts Seventeen and Eighteen are consistent with distribution. . . . [A] reasonable jury could have found the defendant guilty of [those counts] beyond a reasonable doubt, finding that Kellam possessed the cocaine base found on both occasions with the intent to distribute it.

*Id.* at 9-10.

A trial jury in such a prosecution is entitled to find the essential "intent to distribute" element of § 841(a)(1) on the basis of several relevant factors, including the quantity of drugs involved and the amount of relevant cash seized. *See United States v. Collins*, 412 F.3d 515, 519 (4th Cir. 2005); *see also United States v. LaMarr*, 75 F.3d 964, 973 (4th Cir. 1996) (finding 5.72 grams of crack consistent with intent to distribute). At trial, the prosecution presented compelling evidence — in addition to the drug quantities that Kellam possessed — showing that she intended to distribute crack cocaine. *See, e.g.*, J.A. 223-24 (testimony of Trooper Seagle

on Count Seventeen that Kellam had over $1300 in cash in her purse on April 4, 2006, some of which was bundled with rubber bands); *id.* at 271 (testimony of Floyd that cash rolled up with rubber band is "generally money that [dealers] set aside to . . . purchase more crack-cocaine to sell later"); *id.* at 273-76 (testimony of officer Raymond Floyd on Count Eighteen that Kellam possessed "bag practically full of" crack paraphernalia on May 31, 2006). In such circumstances, Kellam's convictions on Counts Seventeen and Eighteen were also amply supported by the evidence.

5.

In her final appellate contention, Kellam maintains that the district court erred in sentencing her to life in prison on Counts One and Eight. The basis of this contention is that the life sentence enhancement of 21 U.S.C. § 841(b)(1)(A) (the "enhancement provision") was erroneously applied to those offenses.

a.

Pursuant to the enhancement provision, "[i]f any person commits a [federal drug offense involving 50 grams or more of cocaine base] after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). The prosecution thus must establish the following: (1) the defendant committed a federal drug offense involving 50 grams or more of cocaine base; (2) the defendant had at least two prior convictions; (3) such prior convictions were felony drug offenses; and (4) such convictions have become final. The person who committed the federal drug offense and the person convicted of the prior felony drug offenses must be the same person, and proof of such identity is essential to the enhancement provision's applicability. *See United States v. Carrillo-Beltran*, 424 F.3d 845, 848 (8th Cir. 2005) (observing that identity of defendant is "inti-

mately related" to proof of prior conviction); *see also United States v. Arreola-Catillo*, 539 F.3d 700, 705 (7th Cir. 2008) (affirming life sentence enhancement when identity of person with prior convictions was sufficiently linked to defendant); *United States v. Lampton*, 158 F.3d 251, 260 (5th Cir. 1998) (same).

In order to subject a defendant to a mandatory life sentence, the prosecution must file and serve an appropriate information before trial, specifying the prior convictions upon which it intends to rely. *See* 21 U.S.C. § 851(a)(1). If the defendant "denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid," she must file a written response to the information. *Id.* § 851(c)(1). The district court then conducts an appropriate hearing, without a jury, "to determine any issues raised by the response which would except the person from increased punishment." *Id.* Importantly, the prosecution must, under the statute, prove beyond a reasonable doubt any issue of fact relating to the prior convictions. *See id.*[24]

b.

With this legal background in mind, we assess whether Kellam was, on this record, subject to the enhancement provision. In this regard, the initial prong of the enhancement pro-

---

[24]The provisions of 21 U.S.C. § 851(c)(1) govern a district court's handling of an information filed under the enhancement provision. Section 851(c)(1) specifies that,

> [i]f [a defendant] denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. . . . The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. . . . The hearing shall be before the court without a jury and either party may introduce evidence. . . . [T]he United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact.

vision is satisfied by Kellam's convictions on Counts One and Eight. The issue we must resolve relates to identity — that is, pursuant to the enhancement provision's second prong, whether the prosecution established beyond a reasonable doubt that Kellam had the two prior convictions utilized to support her life sentences.[25]

By the Information, the prosecution alleged that Kellam had three prior felony drug convictions, including the two convictions used by the sentencing court to apply the enhancement provision: (1) a possession of cocaine conviction in Frederick County (Maryland) District Court, with an offense date of February 17, 1993, and a sentencing date of July 16, 1993 (the "Maryland conviction"); and (2) a possession of cocaine conviction in Frederick County (Virginia) Circuit Court, with an offense date of January 15, 2002, and a sentencing date of June 7, 2002 (the "Virginia conviction").[26] On August 23, 2007, Kellam filed her Response to the Infor-

---

[25]In framing the issue as whether Kellam's identity on the prior convictions was properly established, we accept the proposition that the third and fourth prongs of the enhancement provision have been satisfied — that is, that such convictions were felony drug offenses and have become final. Indeed, the district court ruled that the Virginia and Maryland convictions were felonies for purposes of the enhancement provision, finding that "[t]hey are felonies, periods of incarceration of more than one year." J.A. 1248; *see United States v. Burgess*, 478 F.3d 658, 660-62 (4th Cir. 2007) (concluding that "felony drug offense" in enhancement provision is "an offense that is punishable by imprisonment for more than one year under any [drug] law of . . . a State"); *see also* Va. Code Ann. § 18.2-250(a) (possession of cocaine is Class 5 felony with potential punishment of one to ten years); Md. Code Ann. § 27-287 (since repealed) (providing penalty of up to four years for cocaine possession offense). Although the court did not find that the prior convictions had become final, no issue has been raised in that respect.

[26]The district court rejected the prosecution's proof on the third alleged conviction — a 1993 cocaine distribution conviction in Frederick County, Maryland — because the proof consisted only of computer-generated printouts relating to the conviction. The court observed that the printouts were "not a final Court order," and failed to prove the prior conviction. J.A. 1247.

mation, disputing all three of the alleged convictions and asserting that the prosecution "has not proved beyond a reasonable doubt that [she] was convicted." J.A. 1210-11. The following day, the district court conducted its hearing on the issues presented by the Information and the Response. At the hearing, the prosecution sought to prove Kellam's Virginia and Maryland convictions by documentary evidence consisting of the following:

- Exhibit 1: a certified copy of a judgment order on the Virginia conviction, signed by a judge and certified by the court clerk, as well as a revocation order and related papers, *see* J.A. 1266-72; and

- Exhibit 2: a copy of a criminal docket, charge summary, and complaint on the Maryland conviction, each verified by the court clerk, *see id.* at 1273-76.[27]

At the conclusion of the hearing, the court ruled in favor of the prosecution on the Virginia and Maryland convictions, finding that

> it is clear they are qualifying convictions under [the enhancement provision]. They are felonies, periods of incarceration of more than one year. Ms. Kellam was represented by counsel on both occasions. The judgments were those of courts of record and the orders were signed by judges of those courts. It seems to me that they qualify.

---

[27]Exhibit 2 also includes a copy of a criminal docket for an escape charge that occurred at about the same time as the Maryland conviction. *See* J.A. 1277. Additionally, the prosecution filed as Exhibit 4 an electronic information sheet regarding certain proceedings underlying the Virginia conviction. *See id.* at 1287-90.

*Id.* at 1247-48.

On appeal, Kellam contends that the prosecution "had not proved beyond a reasonable doubt that, in fact, [she] was convicted" of any of the three alleged prior offenses, and that the prosecution's exhibits "left the court to speculate only." Br. of Appellants 24-25. In reviewing the propriety of such an enhancement, we assess the district court's findings of fact for clear error and its legal rulings de novo. *See United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008); *United States v. Letterlough*, 63 F.3d 332, 334 (4th Cir. 1995).

c.

Although we have not heretofore focused on the prosecution's obligations with respect to the enhancement provision, several of our sister circuits have done so. In its *Lampton* decision, the Fifth Circuit concluded that the prosecution had satisfied its reasonable doubt burden under the enhancement provision, establishing that the defendant had two prior felony drug offense convictions. *See* 158 F.3d at 260. In that case, the prosecution produced certified copies of two pertinent arrest registers, fingerprint exemplars from such registers, certified copies of the state felony drug convictions, and fingerprint exemplars from the United States Marshal. *See id.* The prosecution then presented evidence linking the defendant to the prior felony drug convictions. *See id.* In that respect, supervisors at the probation office testified to the defendant's birthdate, and a fingerprint expert validated fingerprint records relating to the prior convictions. *See id.*

Other circuits have likewise affirmed § 841(b)(1)(A) enhancements where the prosecution produced evidence linking the person to be sentenced — beyond a reasonable doubt — to the prior convictions. *See Arreola-Catillo*, 539 F.3d at 704-05 (affirming enhancement where evidence included conviction order with birthdate matching defendant's, plea agreement, docketing record, and defendant's acknowledgment of

his signature on plea agreement); *United States v. Sanchez-Garcia*, 461 F.3d 939, 947-48 (8th Cir. 2006) (affirming enhancement where evidence included fingerprint analysis, photograph of defendant from prior case, and evidence connecting defendant to alias used in prior case).

Simply put, a life sentence under the enhancement provision cannot stand if the prosecution does not sustain its burden. For example, in *United States v. Green*, the Tenth Circuit reversed a life sentence imposed under the enhancement provision because the prosecution failed to sufficiently prove identity on the prior convictions. *See* 175 F.3d 822, 833-37 (10th Cir. 1999). There, appellant Eric Bly challenged the sufficiency of such proof, specifically the records relating to two prior convictions of persons identified as "Eric Daniels" and "Derrick Taylors." *Id.* at 835. The sentencing court found these names to be Bly's aliases; that Bly's birthdate and address were similar to those of the two aliases — although not identical; and that Bly had been convicted of another crime occurring nearby at about the time of one of his earlier crimes. *See id.* at 835-36. On this evidence, the district court found the enhancement provision applicable and imposed a life sentence. *See id.* at 833.

Emphasizing the discrepancies in the evidence, the Tenth Circuit reversed, observing that "aliases can be faddish," *Green*, 175 F.3d at 836, and explaining that the prosecution had "offered no photographs or fingerprints, although . . . it could obtain those items quite easily," *id.* at 835. After separately assessing the alleged prior convictions, the court concluded that "the government failed to meet its statutorily mandated burden to establish beyond a reasonable doubt prior convictions for two drug-related felonies," and thus vacated Bly's life sentence. *Id.* at 836.

d.

In these circumstances, we are unable to conclude that the prosecution has carried its burden. As noted, the district court

did not explicitly find that Kellam was the defendant in the underlying Virginia and Maryland convictions. On the Virginia conviction, Exhibit 1 included a certified copy of a judgment order signed by a judge, and two revocation orders signed by a different judge. On the Maryland conviction, Exhibit 2 included a copy of a criminal docket showing a guilty plea, a charge summary, and a complaint. Notwithstanding this documentary evidence, the prosecution made no apparent effort to establish that Kellam was the person convicted in those prosecutions. Indeed, the record reflects a number of discrepancies with respect to the issue of identity:

- The names of the defendants used in the supporting documents and in this prosecution are inconsistent. For example, the last name is spelled in three ways — "Kellam," "Kellem," and "Kellum." Exhibit 2 uses the name "Charceil Denise Kellum." *See* J.A. 1273. The Information displays the name "Charceil Davis Kellam," as do the Exhibit 1 documents and Kellam's notice of appeal. *See id.* at 91, 1266-72, 1317. A docket entry for an escape charge in Maryland (included in Exhibit 2) uses the name "Charceil Denise Davis Kellem." *See id.* at 1277. Finally, Kellam was indicted and prosecuted in this case as "Charceil Kellam." *See id.* at 24. No explanation of these discrepancies has been made.[28]

- The Exhibit 1 documents purportedly reflect a Social Security number and a birthdate, but those numbers are partially redacted. And it is unclear when the redactions were made. *See* J.A. 1266-72.

---

[28]The PSR listed three aliases for Kellam: Charceil Davis Kellam, Charceil Denise Kellam, and Charceil Davis. *See* J.A. 1427. It is unclear whether those aliases were independently obtained, or whether they were extracted from the exhibits relating to the Virginia and Maryland convictions.

- Although some personal information was reflected in Exhibit 2 — including an address and birthdate on the charge summary and the complaint — no effort was made to link that information to Kellam's identity.[29]

In addition to such discrepancies, the prosecution failed to produce other compelling evidence of identity, such as fingerprint records or photographs, establishing Kellam as the defendant in the Virginia and Maryland convictions. In our view, it should not have been difficult for the prosecutors to present such evidence — or to resolve whether it was available.[30]

Finally, there were at least two other potential deficiencies in the sentencing hearing. First, the court failed to inquire of Kellam whether she affirmed or denied that she had been previously convicted of the three alleged state drug offenses, which it was apparently obligated to do. *See* 21 U.S.C. § 851(b) ("[T]he court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether [s]he affirms or denies that [s]he has been previously convicted."). Second, the court incorrectly stated that Exhibit 2 contained a judgment order "signed by the judge[ ] of th[at] court." J.A. 1248. The prosecution conceded on appeal — in oral argument — that the documents in Exhibit 2 did not include any judgment orders or anything signed by a judge.

---

[29]The probation officer testified concerning how he had obtained and utilized supporting documents in formulating the PSR. He did not, however, present any additional evidence establishing Kellam as the defendant in the Maryland and Virginia convictions.

[30]As appropriately observed several years ago, we should refrain from encouraging the government "to be sloppy and unprofessional." *United States v. Norman*, 701 F.2d 295, 302 (4th Cir. 1983) (Murnaghan, J., concurring); *see also State v. McKown*, 180 S.E. 93, 94 (W. Va. 1935) ("Different orthographies of a name, though phonetically identical, may or may not indicate the same person. . . . Before an accused is subjected to a superimposed penalty because of a former conviction, simple justice requires that he be proven to be the former convict.").

e.

On this record, it is *possible*, or perhaps *probable*, that Kellam is the defendant in the Virginia and Maryland convictions. Indeed, it may be *likely* that Kellam is that person. Nevertheless, the prosecution's burden of proof is more than possibly, probably, or likely — it is beyond a reasonable doubt. And, to justify the life sentence enhancement, such proof should have been presented by the prosecution and found as proven by the sentencing court. We are thus constrained to vacate the court's application of the enhancement provision and Kellam's resulting life sentence. We will remand that aspect of this appeal for further proceedings, authorizing the court to permit the prosecution to properly support — if it can — the prior convictions alleged in the Information.[31]

B.

Having disposed of Kellam's appellate contentions, we turn to Michel's assertions of error — that the prosecution failed to prove his involvement in the alleged conspiracy, that the district court erred in its determination of drug quantity for sentencing purposes, and that the court erroneously imposed a Guidelines adjustment for being a manager or supervisor of the conspiracy.

---

[31]Notably, in denying Kellam's request to continue the sentencing hearing, the district court may have recognized potential weakness in the prosecution's evidence, stating that

the best course for the defendant now is to hope the government is not prepared to prove those prior convictions today. A continuance would only give them more opportunity to gather the proof requisite to prove the necessary conviction. In that sense, she'd be better off to go forward now and hope the government or probation officer is not in a position to prove these convictions.

J.A. 1223. In addition, because we otherwise vacate Kellam's sentence and remand, we need not address her two Eighth Amendment challenges.

1.

Michel first challenges his conviction on the Count One conspiracy, asserting that he is innocent and that the evidence was insufficient to convict him beyond a reasonable doubt. In particular, he maintains that the evidence is insufficient because "[t]he witnesses who testified for the United States were all either drug users, drug dealers, or convicted felons." Br. of Appellants 55. We assess this contention de novo. *See Smith*, 451 F.3d at 216. We must sustain the verdict if "there is substantial evidence, viewed in the light most favorable to the Government, to uphold it." *See Burgos*, 94 F.3d at 863 (internal quotation marks omitted).

The sufficiency of the evidence to prove an alleged conspiracy is evaluated by whether "any rational trier of fact could have found the essential elements of the conspiracy . . . beyond a reasonable doubt." *United States v. Banks*, 10 F.3d 1044, 1051 (4th Cir. 1993) (internal quotation marks and alterations omitted). On this record, it is clear that the evidence was sufficient — indeed, overwhelming — in support of Michel's conspiracy conviction. Roland Jackson lived two doors from Michel on the Block, and Jackson bought crack cocaine from Michel on a regular basis for approximately eight months in 2004, often paying $1000 for a single ounce. Michel would often front crack to Jackson until he could market it and pay Michel. Lusca regularly obtained crack from Michel from 2004 to 2006 and sold it for him on the Block. Codefendant Scott met Michel in 2005 and "happened to hear he [Michel] was the man on the street at the time that I could talk to if I needed anything." J.A. 651. Scott bought crack from Michel as well. Codefendant Fleurival testified similarly, that he had obtained quarter ounces of crack from Michel on multiple occasions on the Block. Several other witnesses testified about buying crack from Michel or selling it for him, or both, and several of those transactions were corroborated by video recordings. In the context of these under-

lying facts, Michel's challenge to the sufficiency of the evidence on Count One must fail.

2.

Michel's next contention is that the district court erred in its determination of the drug quantity attributable to him for sentencing purposes. He asserts that "[t]he drug weight seized and collected in the course of the controlled buys was nowhere close to the amount assigned by the [PSR] [of at least] 1.5 kilograms of cocaine base." Br. of Appellants 60. The trial evidence and the record, however, provide ample support for the court's drug quantity finding. We review such a drug quantity finding for clear error. *See LaMarr*, 75 F.3d at 972.

At sentencing, the district court assigned Michel a base offense level of 38 — the base offense level for a defendant who has distributed at least 1.5 kilograms of crack cocaine. *See* USSG § 2D1.1(c)(1) (2006). Notwithstanding Michel's challenge to the court's drug quantity finding, the evidence supports the court's attribution to him — by a preponderance of the evidence — of at least 1.5 kilograms of crack. *See United States v. Milam*, 443 F.3d 382, 386 (4th Cir. 2006) (concluding that prosecution must prove drug quantity by preponderance of evidence); *LaMarr*, 75 F.3d at 972-73 (concluding that approximation of drug quantity for sentencing not clearly erroneous if supported by competent record evidence).

At the sentencing hearing, the probation officer testified that, although only thirteen to fourteen grams of crack cocaine were seized during the controlled buys from Michel, he had utilized the trial testimony of three witnesses — Donna Roy, Jackson, and Clark — to ascertain the quantity of crack that should be attributed to Michel. Roy testified that she had distributed eighth, quarter, and full ounce quantities of crack for Michel over a period of approximately eight months, from late 2003 to 2004, conservatively representing more than six

kilograms. Jackson testified that he had purchased approximately two kilograms of crack from Michel between late 2003 and 2005. Finally, Clark had purchased quarter and half-ounce quantities of crack from Michel on multiple occasions during a large part of 2005, representing more than 400 grams. Thus, the evidence readily supports the sentencing court's conclusion that Michel's base offense level was 38, predicated on its attribution to him of at least 1.5 kilograms of crack cocaine.

3.

Michel's final contention on appeal is that the district court erred in applying the Guidelines adjustment for his managerial or supervisory role in the Count One conspiracy. In this regard, the court assigned Michel a three-level adjustment, pursuant to section 3B1.1(b) of the Guidelines. Such an adjustment is warranted "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." USSG § 3B1.1(b) (2006). The enhancement applies "in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." *Id.* § 3B1.1 cmt. n.2. In assessing Michel's role in the conspiracy, the sentencing court found the following:

> [T]he fact of the matter is this was a very bad conspiracy. You were right at the top of this conspiracy. It caused a lot of harm to the people of the Winchester area. Crack cocaine is highly addictive. It causes problems in people's lives. . . . I think that your level of involvement, the scale of activity have been adequately captured by the guideline range.

J.A. 1362-63. The court's ruling regarding a role adjustment is a factual determination reviewed for clear error. *See United States v. Perkins*, 108 F.3d 512, 518 (4th Cir. 1997).

The Sentencing Commission has specified seven factors that a sentencing court should consider in deciding whether an adjustment under section 3B1.1(b) is warranted. Those factors are

> [1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.

*See* USSG § 3B1.1 cmt. n.4. In *United States v. Bartley*, we concluded that such an adjustment was justified where the defendant controlled the activities of other participants in a drug conspiracy, gave advice to street dealers, fixed prices and terms of payment, and directed others to receive payments on his behalf. *See* 230 F.3d 667, 673-74 (4th Cir. 2000); *cf. United States v. Sayles*, 296 F.3d 219, 225 (4th Cir. 2002) (vacating section 3B1.1(b) adjustment because "sole justification offered . . . is that [defendants] bought and sold crack").

As in *Bartley*, the evidence in this case reveals that Michel exercised substantial management responsibilities over the activities of the conspiracy, controlling the drug buys of other conspirators. For example, Lusca and Jackson had engaged in crack cocaine fronting transactions with Michel, receiving crack from Michel on credit and paying him later after they sold the drugs. For eight or nine months, Michel directed Turner to sell crack for him and receive the payments on his behalf, and Michel would tell Turner "what to bring him back, like $200 or 250." J.A. 851. Thus, although Michel asserts that "there was no hierarchy of individuals involved in [the] drug dealing operation or organization," Br. of Appellants 61, the evidence belies this contention. Several witnesses testified

concerning Michel's substantial role in the crack conspiracy in and around Winchester, and the authorities made at least six controlled buys of crack directly from him. On this record, the court did not clearly err in imposing the section 3B1.1(b) sentencing adjustment for Michel's managerial or supervisory role in the conspiracy. We thus also reject his final appellate challenge.

## IV.

Pursuant to the foregoing, we affirm Kellam's and Michel's convictions and Michel's sentence. We vacate Kellam's sentence, however, and remand for such further proceedings as may be appropriate.

*AFFIRMED IN PART,*
*VACATED IN PART, AND REMANDED*